Merrimack
No. 2005-832

JONATHAN FEINS *& a.*

v.

TOWN OF WILMOT *& a.*

Argued: September 13, 2006
Opinion Issued: January 18, 2007

*Upton & Hatfield, LLP*, of Concord (*Matthew R. Serge* and *James F. Raymond* on the brief, and *Mr. Serge* orally), for the petitioners.

*Barto and Puffer, P.A.*, of Concord (*Mark H. Puffer* on the brief and orally), for the respondents.

HICKS, J. The petitioners, Jonathan and Amy Feins, appeal an order of the Superior Court (*McGuire*, J.) affirming decisions of the Wilmot Zoning Board of Adjustment (ZBA) and the Wilmot Planning Board (board) denying their site plan and subdivision applications to divide four lots for the construction of condominiums. We reverse and remand.

The trial court's order recites the following facts: The petitioners own commercially zoned property in Wilmot (town). In 1997, they received cluster subdivision approval to divide the property into twelve lots for use as an office park. As of 2004, the property had not been commercially developed. At that time, the petitioners sought approval to build eight-unit multi-family dwellings on four of the lots previously subdivided. They also sought to further subdivide those lots for condominium conveyance.

On September 13, 2004, the board denied the petitioners' applications for site plan review and subdivision approval, stating the following reasons:

> 1. The application does not adhere to the density requirements pursuant to Article III Sections XI and XII of the Wilmot Zoning Ordinance.

2. The application is not consistent with the original intent of the cluster subdivision approvals as the original approvals were based on the applicant's representation that the sites within this subdivision were to be for commercial use, and the original subdivision approvals required the establishment of buffers between commercial activity and residential activity.

The petitioners appealed both to the ZBA and to the superior court. The ZBA affirmed the board's decision with regard to density and declined to rule on the second reason for denial. That decision was also appealed to the superior court and consolidated with the direct appeal.

The trial court affirmed, ruling that the board's denial of the petitioners' applications on the ground that the "proposed condominium development ... [was] contrary to the intent of the original approval was neither unlawful nor unreasonable." Given this ruling, the court found it unnecessary to reach the density issue. In addition, having found the board's decision neither unlawful nor unreasonable, the court affirmed the ZBA's affirmance of the board's decision.

On appeal, the petitioners contend that the trial court erred in affirming: (1) the board's denial of their applications on the ground that the proposed use was inconsistent with the original approval; and (2) the ZBA's determination that the petitioners' project is prohibited by the town's density regulations.

 We have consistently applied the same standard of review in appeals from decisions of planning boards, *see* RSA 677:15 (1996 & Supp. 2006) (amended 2005), and zoning boards of adjustment, *see* RSA 677:6 (1996). *Bayson Properties v. City of Lebanon*, 150 N.H. 167, 169 (2003).

[T]he burden of proof is on the party seeking to set aside the decision of the zoning board or planning board to show that the decision is unlawful or unreasonable. Under either statute, the appealing party must demonstrate that an error of law was committed or must persuade the trial court by the balance of probabilities that the board's decision was unreasonable.

*Id.* (citations omitted). We, in turn, will uphold the trial court's decision unless it is unsupported by the evidence or legally erroneous. *See Fox v. Town of Greenland*, 151 N.H. 600, 603 (2004) (zoning board of adjustment); *Summa Humma Enters. v. Town of Tilton*, 151 N.H. 75, 79 (2004) (planning board).

The petitioners first contend that the board erred in denying their applications on the ground that their proposed project was inconsistent with the previously-approved subdivision. They argue:

> Focusing on the original intent of the subdivision when it was approved in 1997 is the wrong standard for reviewing the current applications. Were that the test, an owner of a subdivision, or any other project for which a land use approval was previously received, could not change the use of the property. Rather, the proper consideration for the Planning Board is whether the new proposal meets the requirements of zoning and meets the requirements of the subdivision and site plan regulations.

The petitioners further argue that aside from the purported density limitations cited in the board's first ground for denying the applications, the board "did not find that the Petitioners' project failed to comply with any other provisions of the zoning ordinance or planning regulations."

The town characterizes the petitioners' argument as a "claim that once property is subdivided, the subdivided lots can be used for any lawful purpose." The petitioners, however, deny this characterization, emphasizing that they recognized the need to apply, and did apply, for board approval of their new project. They contend that their claim is that the board "is required to review those applications based on current zoning and planning considerations, and not simply to deny the new application because this application was inconsistent with the uses envisioned by the 1997 applicants." Thus, we read the petitioners' argument to be that they were entitled to have their new applications reviewed on their own merits under the applicable regulations, unconstrained by the prior subdivision approval. Based upon the record before us, we agree.

■ We have been cited to no applicable law or regulation that would require a resubdivision of property to meet any standard or requirement different from an initial subdivision. Rather, the statutory definition of "subdivision" subsumes "resubdivision," and thus, absent any applicable law to the contrary, the two should be subject to identical standards. Specifically, RSA 672:14, I (1996) provides:

> "Subdivision" means the division of the lot, tract, or parcel of land into 2 or more lots, plats, sites, or other divisions of land for the purpose, whether immediate or future, of sale, rent, lease, condominium conveyance or building development. It includes resubdivision and, when appropriate to the context, relates to the process of subdividing or to the land or territory subdivided.

On the basis of the record before us, we concur with the reasoning of the court in *Purtill v. Town Plan and Zoning Commission of Glastonbury*, 153 A.2d 441, 443 (Conn. 1959):

> The defendant has not adopted regulations governing resubdivisions as distinguished from subdivisions. In the absence of such regulations, and in view of the statutory inclusion of a resubdivision in a subdivision and of the additional fact that the plan submitted by the plaintiff complied with the subdivision regulations, the [planning] commission lacked the authority to disapprove the plan.

We conclude that a purported inconsistency with the intent of a prior subdivision was not a proper ground for denying the petitioners' new subdivision and site plan applications. Accordingly, the trial court erred in upholding that decision.

Because the board gave a second, independent basis for denying the applications, resolution of this appeal requires that we address the petitioners' second claim of error; namely, that the trial court erred in affirming the ZBA's determination that the town's density regulations preclude the petitioners' project. The town contends that we should not reach this issue, as the trial court did not address it on the merits. The petitioners, on the other hand, argue that the issue is properly before us, as the trial court affirmed the ZBA's decision and the density question was the only issue before the ZBA.

Resolution of the density issue requires interpretation of the town's zoning ordinance. Because "[i]nterpretation of a zoning ordinance is a question of law for this court," *Hurley v. Town of Hollis*, 143 N.H. 567, 569 (1999), we may properly rule upon it without benefit of an initial determination by the trial court.

"Interpretation of a zoning ordinance ... requires us to determine the intent of the enacting body." *Id.* at 569-70 (citation and quotations omitted). We use the traditional rules of statutory construction when interpreting zoning ordinances. *Duffy v. City of Dover*, 149 N.H. 178, 181 (2003). Thus, the "words used in a zoning ordinance will be given their ordinary meaning unless it appears from their context that a different meaning was intended." *Meadowbrook Inn Corp. v. Sheridan*, 120 N.H. 613, 615 (1980). We determine the meaning of a zoning ordinance "from its construction as a whole, not by construing isolated words or phrases." *KSC Realty Trust v. Town of Freedom*, 146 N.H. 271, 273 (2001).

The record suggests that the board believed that a density restriction of two acres per dwelling unit precluded the petitioners' proposed condominium project. Just prior to the board's vote on the application, the chairman stated that his "opinion [wa]s that the ordinance is quite specific that 2 acres per dwelling [was the limit] in the commercial zone." The vice

chairman then urged the board to "[s]tand strong on the density requirement of 2 acres per dwelling unit. This does not meet the density requirements of the ordinance."

The petitioners contend that the board's position on density is erroneous because "[t]he Town amended its zoning ordinance in 2004 to eliminate density requirements on multi-family housing. Consequently, there is no provision in the zoning ordinance regulating the density of multi-family housing in cluster subdivisions." In particular, they point to the amendment of Article VII, Section IV-3, which, prior to 2004, read as follows: "ALLOWED USES: Permitted uses and special exceptions in a Cluster Subdivision shall be the same as in the underlying zoning district, except that multi-family dwellings shall have not more that four (4) dwelling units." The 2004 amendment deleted the last portion of the sentence—from "except that" to "(4) dwelling units." The rationale for the change, as stated in the public hearing notice for the proposed zoning ordinance amendments, was "[t]o delete the restriction for limiting dwelling units in the cluster developments where cluster housing is encouraged."

The town contends that while the amendment of Article VII, Section IV-3, eliminated the limitation on the number of dwelling units in multi-family dwellings, it did not "change the required density—the required acreage—for the units." It cites the following provisions as evidence of an intent to maintain density requirements for cluster subdivisions. First, Article VII, Section II provides:

> Purpose. The purpose of Cluster Subdivision is to encourage flexibility in the design and development of land, promote its most efficient use and preserve open space in harmony with its natural features. Consistent with this purpose, lot sizes and frontage requirements may be reduced so that lots may be clustered on a portion of an entire parcel, subject to Planning Board approval and provided that (1) the remaining land in the parcel is reserved for open space, the future development or subdivision of which is prohibited, and (2) the number of permitted building lots in the subdivision shall not exceed the density allowed in the underlying zoning district.

In addition, Article VII, Section IV(4) provides, in part: "DENSITY: The maximum number of building lots permitted within a Cluster Subdivision shall not exceed the maximum number of lots that would be allowed for a conventional subdivision in the underlying zoning district, excluding any unbuildable land."

The town argues that the intent of these provisions is "to allow lots to be 'clustered' ... while maintaining the same uses and the same density as would be allowed in the 'underlying zoning district.'" The density requirements for the underlying zoning districts are, in turn, found in Article III, Section XI, which provides that "[b]uilding lots in the Village Districts shall contain a minimum of one acre with [specified frontage]" and that "[b]uilding lots in all other districts shall contain a minimum of two acres with [specified frontage]."

Presumably because the express language of these provisions speaks in terms of lots, not units, the town next looks to Article III, Section XII to infer a density limitation on the number of units permissible in a cluster subdivision. That section provides: "Only one single family dwelling or two family dwelling including manufactured home, and the usual accessory buildings shall be built on one lot."

The town contends that this provision cannot be read literally as a restriction on use because multi-family dwellings and nonresidential uses are permitted in the commercial district. It argues that the provision is, "rather, a density provision. When read in connection with Section XI which immediately precedes it in the Zoning Ordinance, Section XII limits the density of dwelling units in the [town] to one unit per either one or two acres, depending upon the district."

The petitioners agree that "Section XII cannot be read literally as a restriction on the allowable use of property." Thus, we find the ordinance ambiguous. "Doubt about the meaning of an ordinance is determined in accordance with the intent of the municipal body that enacted it, and any ambiguity is to be resolved by reference to the apparent object of the provision." *Storms v. Town of Eaton*, 131 N.H. 50, 52-53 (1988) (citation omitted).

> When ... plain and unambiguous language is not available to discern intent, we look beyond the language of the ordinance itself for further indications of legislative intent. When we do so, the entire record underlying the ballot question presented to the voters must be considered in ascertaining voter intent at the time the ordinance was adopted.

*Hurley*, 143 N.H. at 570 (quotations, citation and brackets omitted). Nevertheless, "we will not guess [at] what the drafters of the ordinance might have intended, or add words that they did not see fit to include." *Duffy*, 149 N.H. at 181.

We agree with the town that it is the intent of Article VII, Section II and Article VII, Section IV(4) to impose a density requirement on cluster

subdivisions. The record would also support a finding that the board did not intend to eliminate density requirements with the 2004 amendments. Nevertheless, we are not persuaded that Article III, Section XII bridges the gap between lots and units to impose a per-unit density limitation.

The provision that is now Article III, Section XII was also amended in 2004. Prior to that time, it read:

> Only one dwelling, and the usual accessory buildings, shall be built on one lot. Included with each existing dwelling and the usual accessory buildings shall be a specified parcel of land suitable in size and shape to conform with existing regulations, wherever possible. However, in Districts A and B [the Residential and Village Districts, respectively] with the approval of the Planning Board, units may be clustered in multi-unit dwellings or clusters of single-family dwellings. Sufficient adjoining land shall not be developed for residential or business purposes to equal at least two acres per dwelling unit in District A and one acre per dwelling unit in District B.

Thus, prior to 2004, Article III, Section XII contained a per-unit density limitation like that sought to be enforced by the town in this case. Both parties appear to agree, however, that this limitation would not have applied to the petitioners' subdivision in any event, as the property is located in the commercial district. Moreover, the 2004 amendment to Section XII deleted the explicit density restriction, and replaced the entire section with the following: "Only one single family dwelling or two family dwelling including manufactured home, and the usual accessory buildings shall be built on one lot." The rationale given for the change in the public hearing notice was "[t]o clarify what is allowed to be built on one lot of record in the town."

■ We cannot conclude that the voters would have deleted an explicit per-unit density restriction with the intent of imposing an inferred one. We agree with the petitioners that the town "knew how to . . . impose density limits expressed as [a] number of units." To read a per-unit density restriction into the post-2004 Article III, Section XII would "add words that [the drafters] did not see fit to include." *Duffy*, 149 N.H. at 181.

*Reversed and remanded.*

BRODERICK, C.J., and DALIANIS, DUGGAN and GALWAY, JJ., concurred.