Merrimack
No. 2005-868

MELVIN SEVERANCE, III & a.

v.

TOWN OF EPSOM

Argued: October 11, 2006
Opinion Issued: May 1, 2007

*Wadleigh, Starr & Peters, P.L.L.C.*, of Manchester (*Robert E. Murphy, Jr.* on the brief and orally), for the plaintiffs.

*Soltani/Mosca P.L.L.C.*, of Epsom (*Edward C. Mosca* on the brief and orally), for the defendant.

HICKS, J. The defendant, Town of Epsom (town), appeals a ruling of the Superior Court (*McGuire*, J.) reversing a decision by the Epsom Zoning Board of Adjustment (ZBA) barring the plaintiffs, Melvin Severance, III, Janice Severance and Donald Severance, from using their seasonal dwelling as a year-round residence. The issues before us are: (1) whether seasonal residential use is a permitted use under the town's zoning ordinance; and (2) whether year-round use of the seasonal dwelling is a substantial change of a pre-existing, nonconforming use. We affirm.

The record reflects the following facts. The plaintiffs purchased a seasonal camp in September 2004. The camp was built in 1958, predating

all zoning in Epsom. It is a single-family dwelling, which sits on a .31-acre lot located on a private road in the Residential/Agricultural (R/A) zone. The camp has always been used as a single-family dwelling, a permitted use under the town's current zoning ordinance. The enactment of the zoning ordinance in 1969 and its subsequent amendment in 1978, however, rendered the property nonconforming because the ordinance requires structures in the R/A zone to be on a minimum two-acre lot with 200 feet of frontage on a class V or higher road. The camp was "grandfathered" under the ordinance as a pre-existing, nonconforming use. At the time the property became nonconforming, it was used only during the summer months and was inadequate for year-round occupancy.

Upon purchasing the property, the plaintiffs began using it as a year-round, single-family dwelling. On December 29, 2004, the town's zoning compliance officer issued a letter ordering the plaintiffs to cease using their dwelling as a year-round residence because such occupancy was an unlawful expansion of a pre-existing, nonconforming use. The plaintiffs appealed to the ZBA, which upheld the compliance officer's decision. After the plaintiffs' motion for rehearing was denied, they appealed the ZBA's decision to the superior court, which reversed. The town appeals this ruling.

> The superior court's review in zoning cases is limited. Factual findings of the ZBA are deemed *prima facie* lawful and reasonable and will not be set aside by the superior court absent errors of law or unless the court is persuaded by a balance of probabilities on the evidence before it that the ZBA decision is unreasonable. The party seeking to set aside the ZBA decision bears the burden of proof in the superior court.

*Garrison v. Town of Henniker*, 154 N.H. 26, 29 (2006) (citations omitted). We will uphold the trial court's decision unless the evidence does not support it or it is legally erroneous. *Chester Rod & Gun Club v. Town of Chester*, 152 N.H. 577, 580 (2005).

The town argues that the trial court erred when it reversed the ZBA's decision and found that seasonal residential use was a permitted use under the town's zoning ordinance and that conversion of the plaintiffs' seasonal camp to year-round use was not a substantial change of a nonconforming use. We disagree.

■ Interpreting a zoning ordinance is a question of law. *Cormier v. Town of Danville*, 142 N.H. 775, 779 (1998). Traditional rules of statutory construction govern. *Id.*

> [T]he words and phrases of an ordinance should always be construed according to the common and approved usage of the language, but where the ordinance defines the term in issue, that definition will govern. Further, when the language of the ordinance is plain and unambiguous, we need not look beyond the ordinance itself for further indications of legislative intent. *Id.*

■ The town first argues that seasonal residential use was not a permitted use under the town's zoning ordinance. Thus, the plaintiffs' pre-existing, nonconforming use of their property was for seasonal residential use only, which they are now attempting to expand to year-round residential use. However, the town's zoning ordinance does not distinguish seasonal residential use from year-round residential use. "Residence, Dwelling" is defined in the town's glossary as "[a] structure that is designed or used as a dwelling place for no more than two families." Further, the town defines "Residence, One Family" as "[a] detached or free standing residence other than a mobile home, designed for and occupied by one family only." We find the language of the ordinance to be clear and unambiguous. Under the ordinance, the plaintiffs' property is a single-family residence, which is a permitted use in the R/A zone.

The trial court correctly ruled that "[t]he ordinance draws no distinction between seasonal and year-round occupancy of single-family residences. Had the ordinance drafters intended to differentiate between seasonal and full-time residential occupancy, they would have done so. That is clear because other areas of the zoning ordinance distinguish between full time and seasonal use." For example, the ordinance differentiates between seasonal and year-round use as applied to businesses and campgrounds. *See* TOWN OF EPSOM ZONING ORDINANCE art. III, I (creating separate requirements for "General Business" and "Seasonal (Intermittent) Business(es)"), art. III, L (prohibiting year-round residency at campgrounds, recreational campgrounds, or recreational camping parks). If the ordinance does not fit the circumstances the town desires to regulate, its remedy is to amend the ordinance pursuant to RSA 674:16, I (1996).

■ We next address the town's claim that the expansion from seasonal to year-round use is a substantial change in use under the ordinance. "Zoning, by its nature, is restrictive." *New London Land Use Assoc. v. New London Zoning Board,* 130 N.H. 510, 518 (1988). "Although zoning ordinances may expressly permit the continuation of nonconforming uses, such uses by their very nature violate the spirit of zoning laws." *Id.* However, "[n]onconforming uses may be expanded, where the expansion is a natural activity, closely related to the manner in which a piece of

property is used at the time of the enactment of the ordinance creating the nonconforming use." *Id.* at 516.

Article III of the town's zoning ordinance, entitled "General Provisions," allows nonconforming lots that "existed prior to enactment" of the ordinance in 1969 to "continue to exist" subject to certain provisions. Further, a pre-existing, nonconforming use is permitted to continue indefinitely unless the specific use: (1) "has ceased for any one year period"; (2) "has substantially changed or enlarged"; or (3) "is of such nature which constitutes a hazard to public health and safety, or has become a nuisance." TOWN OF EPSOM ZONING ORDINANCE, art. III, B(3)(b). The town argues that the expansion of the plaintiffs' use of their dwelling from seasonal to year-round constitutes a substantial change. We disagree.

Article III, B(4) of the town's zoning ordinance defines what constitutes a substantial change in use. In pertinent part, the ordinance provides:

> In determining whether any change or proposed change constitutes "substantial" so as to be prohibited under these ordinances the determining authority shall consider factors including but not limited to:
> a. The nature of the use, whether residential, commercial, industrial or otherwise.
> b. The actual size of any enlargement in relation to the original pre-existing use.
> c. The impact of the enlargement or change on the surrounding neighborhood, roads, municipal resources and the environment.
> d. Whether the enlargement or change is violative of any provision of these ordinances in effect at the time and if so the actual number and the substance of each provision which may be violated.

In the instant case, the nonconforming use of the dwelling on an undersized lot is the same whether the occupancy is seasonal or year-round. Under the terms of the ordinance, the identical nonconforming use is carried on year-round. The ordinance does not specifically define as a prohibited change the "mere increase of the nonconforming use in time, whether in the number of hours, days, weeks or calendar months during which the activity may be carried on." *Frost v. Lucey*, 231 A.2d 441, 448-49 (Me. 1967).

At no time did the plaintiffs enlarge or change the actual footprint of the dwelling. Further, the trial court found that year-round occupancy of the plaintiffs' dwelling would not substantially affect the surrounding

neighborhood, roads, municipal resources or the environment. Because the plaintiffs' dwelling is located on a private road, road maintenance is not the town's responsibility. While fire and police access is diminished due to the road's narrow width in the winter, this problem already exists because many full-time residents live on the road. In fact, five of the structures nearest the plaintiffs' property, one on either side and three across the road, are year-round residences. The trial court also found that there was no credible evidence that year-round occupancy by the plaintiffs would negatively affect the environment. *See Town of Hampton v. Brust*, 122 N.H. 463, 469 (1982) ("[w]here there is no substantial change in the use's effect on the neighborhood, the landowner will be allowed to increase the volume, intensity or frequency of the nonconforming use").

■ We agree with the trial court that under the terms of the zoning ordinance, the increase in the amount or intensity of the nonconforming use within the same area in this case did not constitute an improper expansion or enlargement of the nonconforming use. *See id.; Frost*, 231 A.2d at 448. *See generally* 1 ANDERSON'S AMERICAN LAW OF ZONING § 6.50 (4th ed. 1996). We are mindful that, in determining whether an activity is within the scope of a permitted nonconforming use, consideration must be given to the particular facts of the case, the terms of the particular ordinance, and the effect that the increased use will have on other property. *Frost*, 231 A.2d at 448; *see also New London v. Leskiewicz*, 110 N.H. 462, 467 (1970). The trial court properly applied the town's zoning ordinance in determining that in this particular case, a change from seasonal to year-round occupancy did not constitute a substantial change.

*Affirmed.*

BRODERICK, C.J., and DALIANIS, DUGGAN and GALWAY, JJ., concurred.