Rockingham
Nos. 2007-219
2008-064

DOVARO 12 ATLANTIC, LLC

v.

TOWN OF HAMPTON

Argued: November 19, 2008
Opinion Issued: January 9, 2009

*Casassa and Ryan,* of Hampton (*Robert A. Casassa* on the brief and orally), for the petitioner.

*Mark S. Gearreald,* of Hampton, by brief and orally, for the respondent.

DALIANIS, J. In these consolidated appeals, the respondent, Town of Hampton (Town), challenges two trial court decisions concerning the condominium conversion project of the petitioner, Dovaro 12 Atlantic, LLC. The first Superior Court (*Morrill,* J.) order partially reversed and modified the denial by the Town of Hampton Planning Board (board) of the petitioner's subdivision application, and ordered the respondent to allow the condominium conversion project to proceed. The second Superior Court (*Nadeau,* J.) order upheld the board's decision to condition its eventual approval of the project upon the elimination of four of the petitioner's parking spaces, but reversed its decision to require "additional perpetual parking spaces offsite." We affirm.

The record reflects the following facts. The petitioner owns a 5000 square foot lot on Atlantic Avenue in Hampton Beach with two buildings on it. The first is a three-story structure with six apartments; the second, located at the rear of the lot, is a three-bedroom cottage. Use of the lot for dwelling units is a nonconforming use because the lot has too few parking spaces to satisfy the terms of the Town's zoning ordinance, which, until it was amended in 2006, required two parking spaces for each dwelling unit. The lot cannot accommodate two parking spaces for each of the seven dwelling units. Renters at the property typically have leased parking spaces offsite. The lot is also nonconforming to the extent that any onsite parking spaces are not nine feet by eighteen feet and are not "connected with a street or immediately by a surfaced driveway which affords satisfactory ingress and egress." It is also nonconforming to the extent that the required parking spaces, if not onsite, are not "assured perpetual existence by easement." Because the lot has been used for dwelling units since before the zoning ordinance was enacted, this use is deemed a preexisting nonconforming use.

The petitioner seeks to convert the apartments and cottage into a condominium project with seven units. It filed its first application with the board to convert the units in October 2005. The application proposed no change to the footprint of the buildings, but proposed changing the use of the units from seasonal to year-round. Each condominium was to have its own parking space, one of which would abut the street while the remaining six would consist of two rows of cars stacked three deep.

The board initially denied the application upon the ground that there was a lack of accessible parking for each unit and that, if the petitioner sought certificates of occupancy for year-round use, the preexisting nonconforming

use would be expanded. In May 2006, upon rehearing, the board denied the application upon the ground that converting the units to condominium units would perpetuate "a public nuisance with respect to parking ingress and egress" and jeopardize public health and safety "because of the difficulty with emergency access."

The petitioner appealed to the superior court, which partially reversed and modified the board's decision. In its February 2007 order denying the Town's motion for reconsideration, the trial court clarified:

> The Planning Board committed legal error when denying [the petitioner's] application to convert the apartments in its buildings on Atlantic Avenue to condominiums. [The petitioner's] present nonconforming use of its property — which the board did not find to be a nuisance or safety hazard — must be permitted to continue, regardless of the form of ownership of the units.

With respect to parking, the court ruled that the board could not deny the petitioner's application in its entirety on the ground that the proposed parking spaces would create a nuisance and safety hazard. The court ordered the board to grant the petitioner's application "without the parking spaces it deems offensive." The Town appealed to this court.

In light of the trial court's ruling, the petitioner submitted a revised application to the board, which the board conditionally approved in April 2007. Under the revised proposal, the seven condominium units would have eight parking spaces, stacked in two adjacent columns. One column would contain three stacked spaces and the other would contain five. Only two spaces would have direct ingress and egress to the street; owners using the other six spaces might need to have other vehicles moved each time they parked or left the premises.

Of the eight parking spaces proposed, the board found that four spaces would perpetuate "a public nuisance with respect to parking ingress and egress" and jeopardize public safety "because of the difficulty with emergency access." The board deemed the remaining four spaces to be "inoffensive and safe." These spaces consisted of three stacked spaces in one column and a single space in the other column. The board required the condominium association "to secure offsite parking for the other units in perpetuity."

The petitioner appealed to the superior court, which upheld the board's decision to eliminate four parking spaces but reversed its decision to require the condominium association to secure perpetual offsite parking. The Town again appealed to this court, and its two appeals were consolidated.

Our review of the trial court's decisions is deferential. *Derry Senior Dev. v. Town of Derry*, 157 N.H. 441, 447 (2008). We will uphold the decisions on appeal unless they are unsupported by the evidence or legally erroneous. *Id.* Superior court review of planning board decisions is equally limited. *Id.* The superior court is obligated to treat the factual findings of the planning board as *prima facie* lawful and reasonable and cannot set aside its decision absent unreasonableness or an identified error of law. *Id.* The appealing party bears the burden of demonstrating that, by the balance of the probabilities, the board's decision was unreasonable. *Id.* The review by the superior court is not to determine whether it agrees with the planning board's findings, but to determine whether there is evidence upon which they could have been reasonably based. *Id.*

The Town first argues that the trial court erred when it reversed the board's decision to require the condominium association to secure offsite parking for some units in perpetuity. The Town contends that "the utilization of off-site parking was part and parcel of the pre-existing, non conforming use of this site," and, thus, the board acted consistently with the petitioner's vested right to continue its preexisting nonconforming use when the board required offsite parking.

The trial court found, however, that the tenants of the property — not the property owner — had secured offsite parking. Thus, contrary to the Town's assertion, use of offsite parking was not part of the property owner's nonconforming use of the land. Although, in a footnote, the Town contends that the record does not support the trial court's finding, whether the record supported the trial court's finding is not one of the questions in the Town's notice of appeal. *See* Sup. Ct. R. 16(3)(b). Indeed, the Town appears to have accepted this finding in its notice of appeal by asking: "Was the trial court's decision erroneous, where its conclusion that the proposed conversion 'would not fundamentally alter the property's present usage' . . . was inconsistent with its own finding that '[t]ypically, renters at the . . . property had leased parking spaces located nearby, but off site?' " Further, the Town has not provided a record that demonstrates that it raised this issue in the trial court, thereby preserving it for our review. *See Bean v. Red Oak Prop. Mgmt.*, 151 N.H. 248, 250 (2004). Therefore, we accept the trial court's finding, and reject the Town's assertion that using offsite parking was part of the petitioner's nonconforming use of the property.

The Town next argues that the trial court overstepped its bounds by leaving only some of the board's parking limits intact. The Town asserts that when the trial court upheld the board's decision to retain four onsite parking spaces and eliminate the remaining onsite spaces, the court, in effect, stripped the petitioner's preexisting nonconforming use of its

protected status. Having done so, the Town argues, the trial court then erred by ruling that the petitioner's property did not have to comply with the Town's zoning ordinance. Once the petitioner's preexisting nonconforming use was stripped of its protected status, the court should have ruled that the petitioner's use must now conform in all respects to the ordinance's parking requirements.

The Town provides no support for this assertion, which appears to conflict with the Town's zoning ordinance. The Town's zoning ordinance defines a nonconforming use as: "A building, structure or use of land, existing and lawfully occupied at the time of the enactment of this Ordinance or any subsequent amendment thereto, . . . which does not conform to one or more provisions of the Ordinance for the district in which it is located." The ordinance prohibits "[t]he expansion of non-conforming uses and structures," and provides that no such use or structure "may be altered for use for a purpose, or in a manner, substantially different from the use to which it was put to before alteration, or to be permitted to revert to its original non-conforming use or structure once [it] changes to a conforming use or structure."

■■ In this case, the board's decision to eliminate four of the proposed eight parking spaces brought the parking on the petitioner's lot into compliance with the ordinance's requirement that all parking connect with a street or immediately to a driveway that affords sufficient ingress and egress. While we agree that the ordinance will prohibit the petitioner from reverting to parking spaces that lack sufficient ingress and egress, it does not require the petitioner to change his preexisting use of the lot to conform to the rest of the ordinance's parking space requirements (*e.g.*, to assure that all spaces that are not on site have "perpetual existence by easement"). Additionally, the right to continue a nonconforming use is a vested right, secured not only by statute, *see* RSA 674:19 (2008), but also by Part I, Articles 2 and 12 of the New Hampshire Constitution. *Ray's Stateline Market v. Town of Pelham*, 140 N.H. 139, 143 (1995). In light of all of the above, we decline to hold that having brought its preexisting use into compliance with one parking requirement, the property owner in this case had to bring its preexisting use of the property into compliance with *all* such requirements.

We do not address whether the trial court erred by upholding the board's decision to eliminate the "offensive" parking spaces in the first place because the petitioner did not file a cross-appeal raising that issue.

The Town next asserts that the trial court erred when it declined to find that converting the seasonal apartments into year-round condominiums substantially changed or expanded the petitioner's nonconforming use. We disagree.

A nonconforming use is a lawful use existing on the land when the ordinance prohibiting that use was adopted. *Town of Salem v. Wickson*, 146 N.H. 328, 330 (2001). The zoning ordinance prohibiting the use generally will not apply to it unless the use has substantially changed. *See* RSA 674:19. The zoning ordinance will apply "to any alteration of a building or use for a purpose or in a manner which is substantially different from the use to which it was put before alteration." *Id.*

Whether a proposed use would constitute a substantial change in the nature or purpose of the preexisting nonconforming use turns upon the facts and circumstances of the particular case. *Hurley v. Town of Hollis*, 143 N.H. 567, 571 (1999). Because the Town's zoning ordinance does not define what constitutes a substantially different use or the factors that must be examined, *cf. Severance v. Town of Epsom*, 155 N.H. 359, 362 (2007), we look to our common law. *See Hurley*, 143 N.H. at 571.

Under the common law, to determine whether there has been a substantial change in the nature or purpose of a preexisting nonconforming use, we consider: (1) the extent to which the use in question reflects the nature and purpose of the preexisting nonconforming use; (2) whether the use at issue is merely a different manner of using the original nonconforming use or whether it constitutes a use that is different in character, nature, and kind; and (3) whether the use will have a substantially different effect upon the neighborhood. *Hurley*, 143 N.H. at 571-72. We strictly construe provisions that permit the continuance of preexisting nonconforming uses, and the party asserting that a proposed use is not new or impermissible bears the burden of proof. *Town of Salem*, 146 N.H. at 330.

Because the proposed use is a condominium project, we must also be mindful of RSA 356-B:5 (1995), which provides, in pertinent part:

> No zoning or other land use ordinance shall prohibit condominiums as such by reason of the form of ownership inherent therein. Neither shall any condominium be treated differently by any zoning or other land use ordinance which would permit a physically identical project or development under a different form of ownership. . . . Nevertheless, cities and towns may provide by ordinance that proposed conversion condominiums and the use thereof which do not conform to the zoning, land use and site plan regulations of the respective city or town in which the property is

located shall secure a special use permit, a special exception, or variance, as the case may be, prior to becoming a conversion condominium.

Under this statute, where the preexisting nonconforming use is use of the units as rental properties, and where the condominium units would be "physically identical" to the apartment units, the condominium conversion must be allowed to avoid disparate treatment. *Cohen v. Town of Henniker*, 134 N.H. 425, 428 (1991). While a municipality may require a special use permit, special exception or variance for the project, such a requirement may be denied only if the conversion *itself* would have an actual effect on the use of land. *Id.* To determine whether the conversion would have an actual effect on the use of land, we examine the same factors that determine whether there has been a substantial change to a preexisting nonconforming use. *See id.* at 429. "A mere change from tenant occupancy to owner occupancy," however, "is not an extension of a nonconforming use." *New London Land Use Assoc. v. New London Zoning Board*, 130 N.H. 510, 516 (1988).

We conclude that the trial court did not err when it declined to find that converting the seasonal apartments to year-round condominium units was a substantial change in the petitioner's preexisting nonconforming use. In this case, the use of the lot for dwelling units even though the lot lacks sufficient parking to satisfy the zoning ordinance is the same regardless of whether the dwelling units are occupied seasonally or year-round. *See Severance*, 155 N.H. at 362. The *identical* nonconforming use is carried on. *See id.* Further, there was no evidence in the record that year-round occupancy of the units will substantially affect the surrounding neighborhood. *See id.* at 362-63. Nor does the Town argue that such evidence exists. Accordingly, we agree with the trial court that converting the seasonal apartments to year-round condominium units does not constitute a substantial change or expansion of the petitioner's preexisting nonconforming use.

The Town asserts that it is the year-round parking that constitutes a substantial change in use, not the year-round occupancy of the dwelling units. The Town contends that changing the onsite parking from seasonal to year-round will make the parking spaces more crowded and will require the unit owners to find parking on the street so that snow can be removed from the lot, which "may well interfere with the process of clearing snow from the public street."

The Town, however, has failed to demonstrate that evidence of these allegedly substantially different effects on the neighborhood was ever presented to the board. Indeed, the board itself found that the four onsite

parking spaces were "inoffensive and safe." Because the Town has failed to demonstrate that the record compelled a finding that year-round onsite parking would have a substantially different effect on the neighborhood than seasonal parking would have, we conclude that the trial court did not err when it ruled that this change was not a substantial change in the petitioner's preexisting nonconforming use. We, thus, affirm the trial court's determination that converting the seasonal apartments to year-round condominium units did not constitute a substantial change or expansion of the petitioner's nonconforming use.

*Affirmed.*

BRODERICK, C.J., and DUGGAN, GALWAY and HICKS, JJ., concurred.