NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by e-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Rockingham
No. 2018-0491

WORKING STIFF PARTNERS, LLC

v.

CITY OF PORTSMOUTH

Argued: June 18, 2019
Opinion Issued: September 27, 2019

Boynton, Waldron, Doleac, Woodman & Scott, P.A., of Portsmouth (Christopher J. Fischer and Francis X. Quinn on the brief, and Mr. Fischer orally), for the plaintiff.

Robert P. Sullivan, city attorney, and Jane Ferrini, assistant city attorney, of Portsmouth, on the brief, and Mr. Sullivan orally, for the defendant.

Hoefle, Phoenix, Gormley & Roberts, P.A., of Portsmouth (Monica F. Kieser), for the intervenors, joined in the brief of the defendant.

HANTZ MARCONI, J. The plaintiff, Working Stiff Partners, LLC, appeals an order of the Superior Court (Schulman, J.) upholding a decision of the

Zoning Board of Adjustment (ZBA) for the defendant, City of Portsmouth (City), and denying injunctive relief. The court ruled that the plaintiff's use of its property for short-term rentals via websites such as Airbnb was not permitted as a principal use in the zoning district in which the property was located, and that the definition of "[d]welling unit" contained in the City's zoning ordinance was not unconstitutionally vague as applied to the plaintiff. We affirm.

The following facts are recited in the trial court's order or are otherwise undisputed. The plaintiff is a limited liability company that owns a four-bedroom house on Lincoln Avenue in Portsmouth (the property). In turn, the company is owned by two individuals, who reside in a home adjacent to the property. The owners' residence and the property are not located on the same lot, however. No one resides in the property as a primary residence.

At some point, the plaintiff began renovating the property. The plaintiff planned to make the property available for short-term rentals via websites such as Airbnb, Homeaway, and VRBO. While renovations were ongoing, the City received one or more complaints regarding the property. The complaints objected to the plaintiff's plan to use the property for short-term rentals. Before renovations were completed, the City wrote to the plaintiff's owners to notify them that using the property for short-term rentals may not be permitted in the property's zoning district, and recommended that they contact the City's Planning Department to confirm that such a use would be permitted. Despite the City's letter, the plaintiff continued renovating the property and eventually began marketing it on Airbnb. The Airbnb listing offered daily rates, and stated that the property was suitable for family parties, wedding parties, and corporate stays. It also stated that the property could accommodate up to nine guests. As of November 2017, the property was occupied by guests 17% of the year.

The City then received additional complaints objecting to the use of the property for short-term rentals. The complaints were not related to guest misbehavior, loud noises, or other disturbances. Rather, the complaints expressed categorical opposition to the use of the property for short-term rentals via websites like Airbnb. The City's code enforcement officer wrote to the plaintiff, stating that the plaintiff's use of the property was not permitted by the zoning ordinance. The officer informed the plaintiff that, unless it had "documentation to state otherwise," the plaintiff had to cease and desist from using the property for short-term rentals within ten days. The plaintiff, through counsel, requested and received additional time to respond. After approximately three months went by without any response, the code enforcement officer issued a final cease and desist order.

The plaintiff appealed this cease and desist order to the ZBA. After a public hearing, the ZBA upheld the order. The plaintiff did not appear at the hearing. The plaintiff requested a rehearing, claiming it did not receive actual

notice of the public hearing.  The ZBA granted a rehearing.  After a second public hearing, at which the plaintiff had the opportunity to address the ZBA directly, the ZBA once again upheld the cease and desist order.  The plaintiff then appealed the ZBA's decision to the trial court.  The plaintiff also sought to enjoin further attempts by the City to regulate short-term rentals pursuant to the ordinance.  The court affirmed the ZBA's decision and denied injunctive relief.  This appeal followed.

Our review in zoning cases is limited.  Dietz v. Town of Tuftonboro, 171 N.H. 614, 618 (2019).  The party seeking to set aside the ZBA's decision bears the burden of proof on appeal to the trial court.  Id.  The factual findings of the ZBA are deemed prima facie lawful and reasonable, and will not be set aside by the trial court absent errors of law, unless the court is persuaded, based upon a balance of probabilities, on the evidence before it, that the ZBA's decision is unreasonable.  Id.  The trial court's review is not to determine whether it agrees with the ZBA's findings, but rather, to determine whether there is evidence upon which they could have been reasonably based.  Id.  However, the trial court reviews issues of law de novo.  See id.  We will uphold the trial court's decision on appeal unless it is not supported by the evidence or is legally erroneous.  Id.  We review the trial court's rulings on questions of law de novo.  Merriam Farm, Inc. v. Town of Surry, 168 N.H. 197, 199 (2015).

The plaintiff's central argument on appeal is that the trial court erred in interpreting the ordinance as not permitting the short-term rental of the property as a principal use.  The interpretation of an ordinance is a question of law, id., and requires us to determine the intent of the enacting body, Feins v. Town of Wilmot, 154 N.H. 715, 719 (2007).  We use the traditional rules of statutory construction when interpreting zoning ordinances.  Id.  We construe the words and phrases of an ordinance according to the common and approved usage of the language, Town of Carroll v. Rines, 164 N.H. 523, 526 (2013), but where the ordinance defines the terms in issue, those definitions will govern, Severance v. Town of Epsom, 155 N.H. 359, 361 (2007).  Furthermore, we determine the meaning of a zoning ordinance from its construction as a whole, not by construing isolated words or phrases.  Feins, 154 N.H. at 719.  When the language of an ordinance is plain and unambiguous, we need not look beyond the ordinance itself for further indications of legislative intent.  Rines, 164 N.H. at 526.

The ordinance states: "No building, structure, or land shall be used for any purpose or in any manner other than that which is permitted in the district in which it is located."  Portsmouth, N.H., Zoning Ordinance ch. 10, art. 4, § 10.432 (2017) (hereinafter, "Ordinance").  Thus, the ordinance establishes a "permissive" zoning regime intended to prohibit all uses that are not expressly permitted, or incidental to uses so permitted, in the district in which a given property is located.  See Rines, 164 N.H. at 526.  Generally, "[a]s a first step in the application of such an ordinance[,] one looks to the list of primary uses

3

permitted in a given district established by the ordinance." Town of Windham v. Alfond, 129 N.H. 24, 27 (1986).

As the trial court noted, the property is located in the City's "General Residence A" (GRA) district. The ordinance's stated purpose for this district is "[t]o provide areas for single-family, two-family and multifamily dwellings, with appropriate accessory uses, at moderate to high densities (ranging from approximately 5 to 12 dwelling units per acre), together with appropriate accessory uses and limited services." Ordinance ch. 10, art. 4, § 10.410. In accordance with this purpose, the ordinance expressly permits single-family dwellings and two-family dwellings in the GRA district as principal uses. See id. ch. 10, art. 4, §§ 10.434.10; 10.440; see also id. ch. 10, art. 15, § 10.1530 (defining "[p]rincipal use" as "[t]he primary use on a lot, which may have accessory uses"). However, very few other principal uses are permitted as of right in the GRA district. See generally id. ch. 10, art. 4, § 10.440 (listing permitted and prohibited uses, and uses which are only allowed by special exception or conditional use permit). Hotels, motels, inns, and boarding houses are expressly prohibited. Id. Bed and breakfasts with between one and five guest rooms are permitted by special exception,[1] but bed and breakfasts with between six and ten guest rooms are prohibited. See id.; id. ch. 10, art. 15, § 10.1530.

The ordinance defines "[s]ingle-family dwelling" as "[a] building consisting of a single dwelling unit." Id. ch. 10, art. 15, § 10.1530. It similarly defines "[t]wo-family dwelling" as "[a] building consisting of two dwelling units." Id. In turn, a "[d]welling unit" is defined as "[a] building or portion thereof providing complete independent living facilities for one or more persons, including permanent provisions for living, sleeping, eating, cooking and sanitation. This use shall not be deemed to include such transient occupancies as hotels, motels, rooming or boarding houses." Id. The plaintiff argues that it is using the property as a "[d]welling unit" within the definition of that phrase established by the ordinance. By contrast, the City argues that the plaintiff's use of the property constitutes a "transient occupanc[y]" excluded from the ordinance's definition of "[d]welling unit."

The definition of "[d]welling unit" established by the ordinance expressly excludes "such transient occupancies as" hotels, motels, rooming houses, and boarding houses. Id. Thus, under the ordinance, these "transient occupancies" are not considered "[d]welling unit[s]." The ordinance does not, however, define the term "transient" or the phrase "transient occupancies." When a term is not defined in a statute or ordinance, we look to its common

---

[1] The ordinance defines "[b]ed and breakfast" as "[t]he provision of short-term lodging and breakfast within an owner-occupied dwelling. The capacity of the dining facilities shall accommodate no more than 25 persons. (See also: hotel, motel, inn.)" Ordinance ch. 10, art. 15, § 10.1530. The plaintiff does not argue that its use of the property may be permitted, by special exception, as a bed and breakfast with between one and five guest rooms.

usage, using the dictionary for guidance. See Appeal of Silva, 172 N.H. ___, ___ (decided May 10, 2019) (slip op. at 4); Rines, 164 N.H. at 526. Webster's Third New International Dictionary defines "transient," when used as an adjective, as "passing through or by a place with only a brief stay or sojourn." Webster's Third New International Dictionary 2428 (unabridged ed. 2002). Similarly, the New Oxford American Dictionary defines "transient" as follows: "lasting only for a short time; impermanent . . . staying or working in a place for only a short time." New Oxford American Dictionary 1839 (3d ed. 2010). These definitions suggest that short or brief stays at the property constitute "transient occupancies," and further suggest that, insofar as the plaintiff is using the property for rentals as short as one day, the plaintiff is not using the property as a "[d]welling unit."

We find additional support for this construction when we consider the term "transient" together with the words that follow "transient occupancies" as set out in the ordinance. See Feins, 154 N.H. at 719 ("We determine the meaning of a zoning ordinance from its construction as a whole, not by construing isolated words or phrases." (quotation omitted)). The definition of "[d]welling unit" does not exclude all transient occupancies; rather, it excludes only "such transient occupancies as hotels, motels, rooming or boarding houses." Ordinance ch. 10, art. 15, § 10.1530. "The principle of ejusdem generis provides that, when specific words in a statute follow general ones, the general words are construed to embrace only objects similar in nature to those enumerated by the specific words." Dolbeare v. City of Laconia, 168 N.H. 52, 55 (2015); see also State v. Proctor, 171 N.H. 800, 806 (2019) (noting that we have also applied ejusdem generis where general words in a statute follow specific words, and that, "[u]nder either articulation, the general words are construed to apply only to persons or things that are similar to the specific words"). Thus, the ordinance's definition of "[d]welling unit" excludes only "transient occupancies" that are similar in nature to hotels, motels, rooming houses, or boarding houses. Ordinance ch. 10, art. 15, § 10.1530; see Dolbeare, 168 N.H. at 55.

The ordinance sets forth definitions for hotels, motels, and boarding houses, but not rooming houses. See Severance, 155 N.H. at 361 (explaining that, where an ordinance defines the terms in issue, those definitions will govern). Under the ordinance, a "[h]otel" is defined in pertinent part as "[a] building in which the primary use is transient lodging accommodations offered to the public on a daily rate for compensation and where ingress and egress to the sleeping rooms is made primarily through an inside lobby or office, supervised by a person in charge at all hours." Ordinance ch. 10, art. 15, § 10.1530. The ordinance's definition of hotel also includes a cross-reference to its definition of motel. Id. A "[m]otel" is defined in pertinent part as "[a] building or group of detached or connected buildings intended or used primarily to provide sleeping accommodations to the public on a daily rate for compensation and having a parking space generally located adjacent to a sleeping room with each sleeping room discharging directly outdoors." Id. Finally, the ordinance defines

"[b]oarding house" as "[a] residential structure, other than a bed and breakfast, in which rooms are rented, leased or otherwise made available for compensation to more than two but not more than 10 individuals, and where such rooms do not contain separate cooking or bathroom facilities." Id. The common usage of "rooming house" is similar to, though perhaps less precise than, the definition of "[b]oarding house" established by the ordinance. Compare id. with Webster's Third New International Dictionary, supra at 1972 (defining "rooming house" as "a house where rooms are provided and let").

While the physical descriptions in the above definitions vary, a common thread runs through them. They all contemplate the provision of lodging to paying guests on a daily basis. Indeed, the ordinance's definitions of hotel and motel explicitly include reference to the availability of lodging at "daily rate[s]." Ordinance ch. 10, art. 15, § 10.1530. While the definition of boarding house does not expressly state that the rooms contained in such facilities must be available by the day, it does provide that such rooms may be "otherwise made available for compensation" in a manner that does not constitute a "lease[]," which suggests that they may be made available on a very short-term basis.

The plaintiff's use of the property fits this mold. The property was advertised on Airbnb as suitable for lodging for up to nine guests, and was available for rentals as short as one day. The advertisement also included a daily rate. Thus, when we consider the ordinance as a whole, we conclude that the plaintiff's use of the property for daily rentals to paying guests constitutes a "transient occupanc[y]" similar to a hotel, motel, rooming house, or boarding house. Because the ordinance expressly excludes "such transient occupancies" from the definition of a "[d]welling unit," this use is not as a "[d]welling unit."

The plaintiff argues that, despite the property's use for short-term rentals, it "[r]emains a [d]welling [u]nit under the" ordinance. (Bolding omitted.) The plaintiff contends that the ordinance "defines a dwelling unit in terms of the building's composition and arrangement" because the ordinance states that any building, or portion of a building, that "provid[es] complete independent living facilities" constitutes a dwelling unit. (Quotation omitted.) It notes that the ordinance, in addition to providing a definition of dwelling unit, also provides a definition of "use." Specifically, the ordinance defines "[u]se" as

> [a]ny purpose for which a lot, building or other structure or a tract of land may be designated, arranged, intended, maintained or occupied; or any activity, occupation, business or operation carried on or intended to be carried on in a building or other structure or on a tract of land.

Ordinance ch. 10, art. 15, § 10.1530. Because the ordinance defines "use" in terms of how a building is arranged, intended, maintained or occupied, "[i]t

6

therefore follows," according to the plaintiff, "that the mere existence of a building having [complete independent] living facilities means that it is a dwelling unit and [is] being used as such." The plaintiff argues that a dwelling unit becomes a transient occupancy not when it is used to provide short-term rentals to paying guests, but only "when the internal layout is altered in such a way as to limit access to such independent living facilities." The plaintiff further argues that hotels, motels, boarding houses, and rooming houses do not provide unlimited access to independent living facilities, hence the reason the ordinance considers them to be transient occupancies.

Looking to the text of the ordinance, it is true that the ordinance defines "[d]welling unit" as "[a] building or portion thereof providing complete independent living facilities . . . , including permanent provisions for living, sleeping, eating, cooking and sanitation." Ordinance ch. 10, art. 15, § 10.1530. However, this same definition expressly excludes "such transient occupancies as hotels, motels, rooming or boarding houses." Id. The unifying feature that these "occupancies" share is the provision of short-term lodging accommodations to paying guests for as little as one day. See id. Thus, when we consider the definition of "[d]welling unit" as a whole, we find that, even if a building would otherwise qualify as a "[d]welling unit" because it provides "complete independent living facilities," if the building's principal use is for "transient occupancies" similar to hotels, motels, rooming houses, or boarding houses, it is not being principally used as a "[d]welling unit." Id. Nor are we persuaded by the plaintiff's argument pertaining to the ordinance's definition of "[u]se." Id. While that definition, like the definition of "[d]welling unit," is partially phrased in terms of a building's physical characteristics, those characteristics are merely ways to illustrate the property's "purpose." Id. (emphasis added). For the reasons discussed above, this property's "purpose" is not to provide a "[d]welling unit" because, regardless of how the property may be physically arranged, it does not meet the definition of "[d]welling unit." See id.

Furthermore, it is a familiar principle of statutory construction that one should not construe a statute or ordinance to lead to an absurd result that the legislative body could not have intended. See Dietz, 171 N.H. at 619; Hogan v. Pat's Peak Skiing, LLC, 168 N.H. 71, 75 (2015) ("[I]t is not to be presumed that the legislature would pass an act leading to an absurd result . . . ." (quotation omitted)). The plaintiff acknowledged to the trial court that, under its interpretation, there would be no impediment to every home in the GRA district being used exclusively for short-term rentals. Were we to adopt the plaintiff's construction of "[d]welling unit" and "use," we fail to see how such a result could be avoided under the present ordinance. However, as noted, the stated purpose of the GRA district is "[t]o provide areas for single-family, two-family and multifamily dwellings." Ordinance ch. 10, art. 4, § 10.410. In light of this purpose, it would seem absurd that by: (1) drafting the ordinance to exclude "such transient occupancies as" hotels and motels from the definition of "[d]welling unit"; (2) largely limiting permissible principal uses in the GRA district

7

to dwelling units; and (3) expressly prohibiting hotels, motels, inns, boarding houses, and bed and breakfasts with more than five rooms in the district, the ordinance's drafters intended for there to be <u>no</u> limitations on the use of homes for "transient occupancies" that are materially similar to hotels, motels, or boarding houses. <u>Id</u>. ch. 10, art. 15, § 10.1530; <u>see</u> <u>id</u>. ch. 10, art. 4, § 10.440.

The plaintiff also argues that we should not construe the exclusion of "transient occupancies" from the ordinance's definition of dwelling unit so as not to permit its use of the property because "transient," while capable of meaning simply "brief" or "short," is also "capable of meaning simply not permanent." The plaintiff essentially argues that, because one can reside in a given place for a lengthy period of time without intending to remain there forever, giving controlling weight in this case to the exclusion of "transient occupancies" from the ordinance's definition of dwelling unit could render a whole host of occupancies impermissibly "transient," regardless of their duration. For example, a month-to-month tenancy, or even a tenancy lasting a year or more, could be considered "transient" insofar as a particular tenant does not intend to remain at the leased premises permanently.

While we agree that the plain meaning of "transient" connotes a degree of impermanence, <u>see</u> <u>New Oxford American Dictionary</u>, <u>supra</u> at 1839, we do not construe the phrase "transient" in isolation, <u>see</u> <u>Feins</u>, 154 N.H. at 719. As previously discussed, the principle of <u>ejusdem</u> <u>generis</u> limits the general phrase "transient occupancies" to things similar in nature to hotels, motels, rooming houses, and boarding houses. We agree with the trial court that "the <u>sine</u> <u>qua</u> <u>non</u> of hotels, motels, rooming houses and boarding houses," and what primarily distinguishes them from other types of lodging, "is that they are available for short term stays." Thus, when we consider the definition of "[d]welling unit" as a whole, we conclude that the definition's use of "transient" addresses the duration of the occupancy rather than the permanence of the occupancy.

In sum, we conclude that the plaintiff's use of the property, <u>i.e.</u>, providing short-term rentals to paying guests on a daily basis, is not a "[d]welling unit" use as that phrase is defined in the ordinance.[2] We therefore affirm the trial court's ruling that the ordinance does not permit this use of the property.

Next, we consider the plaintiff's argument that applying the ordinance so as not to permit its use of the property as a "[d]welling unit" renders the ordinance unconstitutionally vague. The constitutionality of an ordinance

---

[2] We note, as did the trial court, that this case does not present us with the occasion to address whether short-term rentals are allowed under the ordinance as an accessory use to a permitted principal use. <u>See</u> Ordinance ch. 10, art. 15, § 10.1530 (defining "[a]ccessory use" as "[a] use that is incidental and subordinate to the principal use and located on the same lot with such principal use or building"). Nor does this case involve an application for a variance.

presents a question of law. McKenzie v. Town of Eaton Zoning Bd. of Adjustment, 154 N.H. 773, 777 (2007). We first address the plaintiff's argument under the State Constitution and cite federal opinions for guidance only. State v. Ball, 124 N.H. 226, 231-33 (1983).

We begin by identifying the scope of the plaintiff's vagueness challenge. An appellant may challenge the constitutionality of an ordinance by asserting a facial challenge, an as-applied challenge, or both. See State v. Hollenbeck, 164 N.H. 154, 158 (2012). A facial challenge is a head-on attack of a legislative judgment, an assertion that the challenged statute violates the Constitution in all, or virtually all, of its applications. Id. On the other hand, an as-applied challenge concedes that the statute may be constitutional in many of its applications, but contends that it is not constitutional under the particular circumstances of the case. Id. Here, the trial court considered the plaintiff's vagueness argument to be an as-applied challenge to the portion of the ordinance that excludes "such transient occupancies as hotels, motels, rooming or boarding houses" from the definition of "[d]welling unit." Ordinance ch. 10, art. 15, § 10.1530. The plaintiff has not challenged this determination on appeal. Accordingly, we consider the plaintiff's vagueness argument to be an as-applied challenge. Thus, the plaintiff must show that the ordinance is vague as applied to its use of the property. See State v. MacElman, 154 N.H. 304, 309 (2006).

The vagueness doctrine is concerned with notice and with the prevention of arbitrary or discriminatory enforcement. Montenegro v. N.H. Div. of Motor Vehicles, 166 N.H. 215, 221 (2014); see also Sheedy v. Merrimack Cty. Super. Ct., 128 N.H. 51, 54 (1986) ("A statute or government regulation is void for vagueness when it either forbids or requires 'the doing of an act in terms so vague that [persons] of common intelligence must necessarily guess at its meaning and differ as to its application.'" (quoting Connally v. General Const. Co., 269 U.S. 385, 391 (1926))). In light of these aims, an ordinance can be impermissibly vague for either of two independent reasons: (1) it fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits; or (2) it authorizes or even encourages arbitrary and discriminatory enforcement. See MacElman, 154 N.H. at 307. With respect to the first vagueness inquiry, the plaintiff argues that construing the ordinance so as not to permit its use of the property "leaves the definition of dwelling units in such a state of obscurity" that people of ordinary intelligence have no way of determining when rentals are impermissibly "transient." The plaintiff also argues that construing the ordinance in such a manner allows for arbitrary enforcement.

We now address the first vagueness inquiry, which, in the context of the plaintiff's as-applied challenge, may be phrased as follows: whether the ordinance provided the plaintiff a reasonable opportunity to understand that the short-term rental of its property to paying guests on a daily basis is not a

"[d]welling unit" use. See MacElman, 154 N.H. at 309 (describing the defendant's as-applied vagueness challenge as requiring the court to "determine whether the statute provided her with a reasonable opportunity to know that her particular conduct was proscribed by the statute"). "Generally, a municipal ordinance must be framed in terms sufficiently clear, definite, and certain, so that an average [person] after reading it will understand when [one] is violating its provisions." Town of Freedom v. Gillespie, 120 N.H. 576, 580 (1980). "Due process requires that a statute proscribing conduct not be so vague as to fail to give a person of ordinary intelligence a reasonable opportunity to know what is prohibited." In re Justin D., 144 N.H. 450, 453 (1999) (quotation omitted). Indeed, "[v]ague laws may trap the innocent by not providing fair warning." Grayned v. City of Rockford, 408 U.S. 104, 108 (1972). We are mindful, however, that "'perfect clarity and precise guidance have never been required.'" Montenegro, 166 N.H. at 222 (quoting United States v. Williams, 553 U.S. 285, 304 (2008)); see also State v. Saucier, 128 N.H. 291, 297 (1986) (observing that a law is not unconstitutionally vague "merely because it could have been drafted with greater precision" (quotation omitted)); Alexander v. Town of Hampstead, 129 N.H. 278, 281 (1987) ("An ordinance is not necessarily vague because it does not precisely apprise one of the standards by which an administrative board will make its decision." (quotation omitted)). Furthermore, "[t]he necessary specificity . . . need not be contained in the statute itself, but rather, the statute in question may be read in the context of related statutes, prior decisions, or generally accepted usage." State v. Porelle, 149 N.H. 420, 423 (2003) (quotation omitted).

With these principles in mind, we conclude that the ordinance's definition of "[d]welling unit" provided the plaintiff with a reasonable opportunity to understand that its conduct was not permitted as a dwelling unit. The ordinance "uses plain and easily understood words" in excluding certain uses from the definition of dwelling unit. Id. at 424. The exclusion of those uses is not phrased "'in terms so vague that [persons] of common intelligence must necessarily guess at [their] meaning.'" Sheedy, 128 N.H. at 54 (quoting Connally, 269 U.S. at 391). Though the ordinance does not provide a definition of "transient," we believe that the plain meaning of "transient," together with the four representative examples of transient occupancies which limit the term's application to things that are similar thereto, provided the plaintiff with fair notice that using the property to provide short-term rentals to paying guests on a daily basis constitutes a "transient occupanc[y]" similar to a hotel, motel, rooming house, or boarding house, rather than a permitted "[d]welling unit" use. Ordinance ch. 10, art. 15, § 10.1530; see Justin D., 144 N.H. at 454 (applying ejusdem generis to conclude that statute prohibiting possession of "other dangerous weapons" at time of arrest provided juvenile with a reasonable opportunity to know that reinforced coin rolls constituted a dangerous weapon as used by the juvenile); MacElman, 154 N.H. at 309 (rejecting defendant's as-applied vagueness challenge where the charged conduct was "clearly within the realm of conduct proscribed by the statute").

10

Turning to the second vagueness inquiry, the plaintiff argues that if the ordinance is interpreted so as not to permit its use of the property, then the ordinance authorizes arbitrary enforcement because there is no evidence in the record that the plaintiff's only use of the property was for short-term rentals. We fail to see the relevance of the plaintiff's contention. Whether the plaintiff sought to use the property for additional purposes has nothing to do with whether one of those uses is permitted under the ordinance. The cease and desist order was issued on the basis of the plaintiff using the property for short-term rentals. The plaintiff acknowledged at oral argument that it allowed guests to rent the property on a daily basis. The ordinance, in plain and easily understood terms, does not permit such uses as "[d]welling unit[s]." Ordinance ch. 10, art. 15, § 10.1530. Accordingly, the plaintiff has not demonstrated, as applied to the facts of this case, that the ordinance is so vague that it authorizes or encourages arbitrary or discriminatory enforcement. See MacElman, 154 N.H. at 307, 309.

In conclusion, the plaintiff has not demonstrated that the ordinance is unconstitutionally vague as applied to its use of the property. The Federal Constitution affords the plaintiff no greater protection than does the State Constitution in these circumstances. See Hill v. Colorado, 530 U.S. 703, 732 (2000); MacElman, 154 N.H. at 307. Accordingly, we reach the same result under the Federal Constitution as we do under the State Constitution.

Affirmed.

LYNN, C.J., sat for oral argument but retired prior to the final vote; HICKS, BASSETT, and DONOVAN, JJ., concurred.