Belknap
No. 2008-674

RITA SUTTON & a.

v.

TOWN OF GILFORD & a.

Argued: September 23, 2009
Opinion Issued: March 30, 2010

*McLane, Graf, Raulerson & Middleton, P.A.*, of Manchester (*Scott H. Harris* on the brief and orally), for the petitioner.

*Mitchell Municipal Group, P.A.*, of Laconia (*Walter L. Mitchell* and *Laura A. Spector* on the brief, and *Ms. Spector* orally), for respondent Town of Gilford.

*Patrick Wood Law Office, PLLC*, of Laconia (*Patrick H. Wood* on the brief and orally) for respondent Barbara Aichinger.

*Wiggin & Nourie, P.A.*, of Manchester (*Thomas J. Pappas* and *Mary Ann Dempsey* on the brief), for Bank of America, N.A., as *amicus curiae*.

BRODERICK, C.J. The petitioner, Rita Sutton, by and through her son and attorney-in-fact, Glenn Sutton, appeals Superior Court (*Smukler*, J.) orders: (1) granting respondent Barbara Aichinger's motion for summary judgment on Sutton's petition for a writ of mandamus; and (2) denying Sutton's request for a permanent injunction to prevent construction and development of Aichinger's non-conforming lot. Aichinger cross-appeals superior court orders: (1) denying her motion to dismiss the petition because Sutton failed to exhaust her administrative remedies; (2) granting declaratory judgment to Sutton on the grounds that Aichinger's property had been merged pursuant to the Town of Gilford's (Town) zoning ordinance; (3) ruling that the Town was not estopped from enforcing its zoning ordinance; (4) denying her request to reopen the hearing to present evidence on the issues of municipal estoppel and merger; and (5) denying her request for attorney's fees. We reverse in part and affirm in part.

I

At issue in this case is lakefront property (the property) on Governor's Island in Gilford, which Aichinger purchased in 2002. The property is in the Single Family Residence (SFR) district, where lots are required to be one acre in size, and is part of the Governor's Island Club (Club), an association that, among other things, enforces restrictive covenants on land use on the island. At one time, the property was comprised of two parcels (lots 9 and 10). Lot 9, which contained a single structure consisting of a garage and guest house, is approximately 0.6 acres, and lot 10, which contained a residence, is approximately 0.5 acres. Sometime in the 1980s, pursuant to a provision in the Town's zoning ordinance that automatically merged contiguous nonconforming lots, the Town merged lots 9 and 10 to create a single lot, known as lot 7. Although former lots 9 and 10 are described separately in Aichinger's deed, at the time she purchased the property, it was labeled "lot 7" on the tax maps of the town and was taxed as a single lot. The records of the Club also indicate that the property is a single lot.

In 2006, Aichinger sought clarification from the Town regarding the legal status of lot 7. She first contacted the Town Code Enforcement Officer (CEO) and Town Appraiser to see whether she could treat her property as separate waterfront parcels. Specifically, she inquired whether the two adjoining parcels had been merged by request of the previous owners. The CEO and Town Appraiser informed Aichinger that they did not see any indication in their records that a previous owner had voluntarily merged the property, but did not comment on whether she could treat the parcels as separate lots. The Town Appraiser noted that it appeared that the

parcels had been automatically merged by a mapping company, and informed her that he would recommend that the properties be separately assessed, but that he had no authority to proceed without the direction and approval of the Town Planning Board and Board of Selectmen. The Town Appraiser and CEO then referred Aichinger's question to the Town Director of Planning and Land Use (Director of Planning).

In April 2006, Aichinger contacted the Director of Planning to review the matter and to request a second tax lot ID number. On October 19, 2006, the Director of Planning responded to Aichinger's request by email. He stated that he had reviewed her file, that he had found no evidence that previous owners had voluntarily merged the lots, that lots 9 and 10 appear to have been merged even on some of the older tax maps, but that the maps "clearly show signs that there were once two lots," and that he presumed that "the lots were merged involuntarily at the time that the Town had a law requiring such automatic mergers." He also stated that "[t]he courts threw out that law" and that he believed "all automatic mergers were effectively voided." On January 15, 2007, the Director of Planning sent a follow-up letter, stating, in relevant part:

> This letter is sent to confirm that the Town Assessor and I agree that [the parcel] is legally two (2) lots. It appears that the lots were automatically merged only on the Town tax maps and not at the Registry of Deeds. Such automatic mergers were required by an old zoning ordinance that was thrown out in a court challenge and is no longer on the books. Your deed still describes two separate lots, not a single merged lot, which further attests to the notion that this property was not the subject of a bona fide merger, and the tax maps show residual evidence of the former lot layout.
>
> Addresses for the two lots will be 554 Edgewater Drive for what used to be lot 9 (the more northerly lot), and 558 Edgewater Drive for what used to be lot 10 (see attached map).

Thereafter, Aichinger began work related to a plan to remove all existing buildings on lot 7 and to construct two new single-family homes, one on former lot 9 and one on former lot 10. Specifically, the record shows that she:

> obtained a permit to demolish the existing house on 558 Edgewater Drive, obtained a new septic design and system permit for both parcels, obtained a building permit for a new house on 558 Edgewater Drive, secured permits for a new driveway on both

parcels, blasted foundation holes for new homes on both parcels, contracted for the construction of a new home on 558 Edgewater Drive, received approval for construction of a new home on 558 Edgewater Drive from respondent Governor's Island Club, and mortgaged 554 Edgewater Drive to fund the construction for 558 Edgewater Drive. Ms. Aichinger also sought buyers for 554 Edgewater Drive.

In May 2007, the Director of Planning wrote to Aichinger indicating that after consulting with town counsel, he realized that his previous advice had been in error, and that Aichinger, in fact, owned a single, merged lot. Aichinger appealed this decision to the Gilford Zoning Board of Adjustment (ZBA). She also began negotiations with the Gilford Board of Selectmen (Board of Selectmen), contending that if the May 2007 decision of the Director of Planning stood, the Town might be liable for money damages based upon municipal estoppel. She also contended that RSA 647:39-a and RSA 75:9 clearly recognize that a landowner must take action to have property merged.

On June 21, 2007, prior to her ZBA appeal hearing, Aichinger entered into a settlement agreement (Agreement) with the Board of Selectmen. Specifically, the Town and Aichinger agreed, *inter alia*: (1) that "the property consists of two separate and distinct parcels of land and the Town has and will continue to assess them as separate tax parcels under NH RSA 76:9"; and (2) the Town "shall take no action and shall not support any action to merge the two lots nor . . . participate in any efforts to merge the two lots." As a result, Aichinger did not pursue her ZBA appeal.

In July 2007, Sutton, an abutting landowner, filed suit in superior court, seeking: (1) an injunction to prevent Aichinger from developing the property in violation of the Gilford Zoning Ordinance; (2) a declaratory judgment that Aichinger was collaterally estopped from litigating whether lots 9 and 10 were merged; (3) a declaratory judgment that the Town is not estopped from enforcing its merger ordinance; (4) a mandamus against the Town requiring it to enforce its zoning ordinances; and (5) attorney's fees against the Town. In early October, Aichinger filed an answer and counterclaim, and later moved for summary judgment. The trial court rejected the motion relating to Counts I (injunctive relief), II (declaratory judgment) and IV (attorney's fees), reasoning that a material issue of fact existed as to whether Sutton would be specially damaged by the alleged zoning violation. The trial court granted summary judgment on Count III (mandamus), concluding that mandamus was not an appropriate remedy in this case because Sutton's right to have the ordinance enforced was not clear and apparent. Rather, the Town had the discretion to settle with Aichinger and, in fact, had exercised its discretion in doing so in good faith,

because the Town had entered into the Agreement to reduce a litigation risk where there existed a non-frivolous claim of estoppel.

Also in October, Aichinger obtained a building permit for the construction of a home on 554 Edgewater Drive, former lot 9. She sought the building permit on behalf of a party with whom she had entered into a purchase and sale agreement for that property. The permit allowed a new single-family home with a garage but contained the following warning: "Subject property is currently involved in litigation any construction at this point could be subject to removal at the owners expense should the court determine that this lot is not a sep[a]rate lot. The Town of Gilford does not recommend starting any construction until all litigation is resolved."

Subsequently, Aichinger asked the Town CEO to amend the permit, informing him that she intended to replace and enlarge the existing guest cottage. By letter, she stated, in pertinent part,

> . . . I am writing this letter to address the condition of the building permit that you issued October 3, 2007 concerning the pending litigation. Per the Gilford Zoning Ordinances I am allowed an expansion within the limits of the property of my nonconforming use which is my fully functional guest home. I therefore would like the building permit to be amended to strike the warning and add the condition that in either outcome of the litigation one lot or two the structure being built will not have to be removed.

The CEO then informed Aichinger by letter that, "Whether this subject property is considered a separate lot or is determined to be part of the property at 558 Edgewater, . . . you are permitted to replace, enlarge, and/or relocate a preexisting dwelling as long as it complies with all other requirements." The CEO also stated in the letter that the building permit would "be amended to reflect a structure replacement." On October 29, the Town issued an amended building permit without the litigation warning contained in the earlier permit. The amended permit stated that it was for a "[n]ew single family home with garage to replace existing single family dwelling," and included the following language: "Preexisting grandfathered dwelling must be demolished prior to the issuance of an occupancy permit for this replacement structure." On December 15, 2007, Aichinger sent an email to Sutton's son, advising him that a building permit had been issued for 554 Edgewater Drive. She attached to the email a copy of the amended building permit and the correspondence from the Town stating that Aichinger was permitted to rebuild her guest house whether she was found to own one lot or two. Sutton did not appeal the issuance of this building permit to the ZBA.

In March 2008, Aichinger filed a motion to dismiss Sutton's request for an injunction to prohibit construction and development at 554 Edgewater Drive. She argued that the fact that the Town had issued the amended building permit indicated that construction of the new house would not violate the Town's zoning ordinance, and that, therefore, as a matter of law, Sutton had not suffered "special damages" under RSA 676:15. Aichinger further contended that Sutton's failure to appeal the issuance of the amended building permit barred her from obtaining an injunction. The trial court denied the motion to dismiss, finding that: (1) whether construction "on a nonconforming use" would specially damage Sutton was a substantive issue to be determined on the merits; and (2) Sutton was not required to exhaust her administrative remedies before the ZBA because the issues in this case were "somewhat unique and not limited to procedural or factual issues."

Following a hearing on the merits in May 2008, the trial court ruled that lots 9 and 10 had been legally merged for over twenty years, that the Town was not municipally estopped from treating the property as one parcel, and that the only way for Aichinger to create two lots would be to subdivide the merged property. The trial court further ruled that Aichinger had the right to replace the existing garage and guest cottage on lot 9 with a new structure, regardless of the property's merged status, and therefore denied Sutton's request for injunctive relief to bar the planned construction. The trial court denied the request for attorney's fees against the Town, the parties' motions to reconsider, and Aichinger's request to reopen the hearing to introduce evidence relating to municipal estoppel and the merger issue. This appeal and cross-appeal followed.

## II

We first address Aichinger's contention that Sutton's petition should have been dismissed because Sutton failed to exhaust her administrative remedies. Aichinger had moved to dismiss Sutton's petition for declaratory judgment and injunctive relief, in part, on the grounds that Sutton did not exhaust her administrative remedies because she did not appeal either the original or amended building permits to the ZBA in the fall of 2007. The trial court denied the motion. Later, in its order on the merits, the trial court ruled that the amended permit was valid because Sutton never appealed the permit, and offered "no persuasive explanation for this failure." The practical result of the trial court's two orders was essentially a ruling that the exhaustion doctrine barred Sutton's request to enjoin the construction authorized by the amended building permit, but not her request for declaratory judgment that Aichinger owns only one lot. On appeal, Aichinger appears to argue that Sutton's entire petition should have

been dismissed because she failed to exhaust her administrative remedies. We disagree, and hold that the exhaustion doctrine bars Sutton's request for an injunction to the extent that Sutton sought to enjoin the construction authorized by the October 29, 2007 amended building permit, but does not bar her request for a declaratory judgment that Aichinger owns only one lot.

The pleadings and affidavits before the trial court at the time it considered Aichinger's motion to dismiss reflect the following. In July 2007, after Aichinger and the Town reached the Agreement in which the Town agreed to treat Aichinger's property as two lots, Sutton filed suit in superior court against Aichinger, the Town, and Governor's Island Club seeking, *inter alia*: (1) an injunction to prevent Aichinger from developing the property in violation of the Gilford Zoning Ordinance; and (2) a declaratory judgment that Aichinger was collaterally estopped from litigating whether lots 9 and 10 were merged. Three months later, in October 2007, Aichinger sought, and was issued, an amended building permit. According to an affidavit Aichinger filed in support of her motion to dismiss, Aichinger sent Sutton's son an email in December 2007, advising him that a building permit had been issued, and stating her intent to rebuild her guest house. Aichinger's affidavit stated that the permit contained the following language: "Preexisting grandfathered dwelling must be demolished prior to the issuance of an occupancy permit for this replacement structure," and authorized Aichinger to rebuild her guest house, as a five bedroom residence, in the manner she had originally proposed.

Evidence introduced at the hearing on the merits confirmed that the amended building permit did, in fact, authorize Aichinger to rebuild, regardless of whether she was found to own one lot or two. Testimony and exhibits show that when Aichinger emailed Sutton's son in December 2007, she attached to her email a copy of the amended building permit and the correspondence from the Town which stated that, regardless of whether she is found to own one lot or two, Aichinger was permitted to "replace, enlarge, and/or relocate a preexisting dwelling as long as it complies with all other requirements." Sutton failed to appeal this permit. According to the trial court, she had "no persuasive explanation" for failing to do so.

 Ordinarily, challenges to decisions regarding building permits must first be made to the zoning board of adjustment. *See* RSA 674:33 (Supp. 2009); RSA 676:5 (2008); RSA 677:3 (2008). Should a party be dissatisfied with the decision of the zoning board, the party may appeal to the superior court. *See* RSA 677:4 (Supp. 2009). This legislative scheme is intended to give a local zoning board the first opportunity to pass upon any alleged

errors in its decisions so that the superior court may have the benefit of the zoning board's judgment in hearing the appeal. *McNamara v. Hersh*, 157 N.H. 72, 73 (2008).

■ Generally, parties must exhaust their administrative remedies before appealing to the courts. *See id.* "Except in rare instances, if a party aggrieved by the action of a city official in zoning matters fails to exhaust statutory remedies, a petition for injunctive relief will not lie." *V.S.H. Realty, Inc. v. City of Rochester*, 118 N.H. 778, 782 (1978). This rule is "based on the reasonable policies of encouraging the exercise of administrative expertise, preserving agency autonomy, and promoting judicial efficiency," and "is particularly applicable when . . . substantial questions of fact exist concerning a city zoning ordinance, matters that belong in the first instance to the designated local officials." *Id.* It is only in limited situations, as "where the issue on appeal is a question of law rather than a question of the exercise of administrative discretion," *Pheasant Lane Realty Trust v. City of Nashua*, 143 N.H. 140, 141-42 (1998), that a party is not required to exhaust administrative remedies.

■ We conclude that Sutton was required to appeal the amended building permit to the ZBA to challenge whether the permit, authorizing Aichinger to replace her relatively modest structure with one that could arguably be used as a primary residence, complied with the ordinance. Sutton's petition for injunctive relief challenged Aichinger's right to treat her property as two lots, and Sutton sought an order enjoining construction on the grounds that Aichinger was not entitled to build a second residential structure on one lot. The amended permit, however, was not predicated, as Sutton now argues, upon Aichinger's owning two lots. Rather, the permit authorized the construction of a "replacement structure" on the grounds that the guest house was a "preexisting grandfathered dwelling." Therefore, the only question before the zoning board in an appeal of the October 29 permit would have been whether a permit authorizing Aichinger to replace her "preexisting grandfathered" 600 square foot guest house with a "replacement structure" that has a 2295 square foot ground floor, five bedrooms, two stories, a covered porch and an attached three-car garage, violates the ordinance. This is not a situation, as Sutton argues, in which the issues in the case were more properly suited to judicial, rather than administrative treatment. As we stated in *McNamara*, 157 N.H. at 76, the question of whether a building permit complies with the ordinance is not a question that is particularly suited to judicial treatment or resolution, but is one that is routinely addressed by the local zoning board. Therefore, because Sutton failed to appeal the amended building permit to the ZBA,

she is barred by the exhaustion doctrine from challenging in superior court construction undertaken pursuant to that permit.

We acknowledge that Sutton's petition sought to enjoin Aichinger from constructing a single-family residence, and that the structure that replaced the guest house could arguably be used as a single-family residence. Furthermore, both the original permit, granted in response to Aichinger's request to build a single-family home, and the amended permit, granted in response to Aichinger's request to rebuild her guest house, apparently authorize the construction of the same five bedroom structure. Nevertheless, Sutton's petition sought to bar construction based upon a legal argument that the property had merged, and not upon factual issues related to replacing purportedly grandfathered structures on a single lot. Whether the permit that authorized Aichinger to replace her relatively modest structure with one that could arguably be used as a primary residence was in accordance with the local zoning ordinance is precisely the kind of issue that involves "fact[s] . . . concerning a . . . zoning ordinance, matters that belong in the first instance to the designated local officials." *V.S.H. Realty, Inc.*, 118 N.H. at 782.

■ We conclude, however, that the trial court did not err when it denied Aichinger's request to dismiss Sutton's remaining claims. Sutton's superior court action to determine the status of Aichinger's property began three months before Aichinger obtained the amended building permit. As we have stated, the amended permit is predicated upon Aichinger's assertion that she was entitled to rebuild her guest house whether she owned one lot or two lots. Therefore, Sutton's failure to appeal that permit does not bar her request for a declaratory judgment that Aichinger owns a single, merged, lot.

Aichinger asserts that the trial court "erred by permitting [Sutton] to continue her litigation" because she failed to appeal certain other administrative decisions to the ZBA. We conclude that these arguments either were not raised below, and therefore have not been preserved for our review, *see McKenzie v. Town of Eaton Zoning Bd. of Adjustment*, 154 N.H. 773, 776 (2007), or under the circumstances of this case, are without merit and do not warrant further discussion, *see Vogel v. Vogel*, 137 N.H. 321, 322 (1993).

### III

We turn now to Aichinger's argument that the trial court erred when it ruled that the property had merged pursuant to the automatic merger provisions of the Ordinance. Aichinger asserts that the trial court erred in ruling that the property had merged because: (1) the decision of whether to merge nonconforming lots in the same ownership is one to be made solely

by the landowner, and such lots cannot be automatically merged by local zoning provisions; and (2) the trial court failed to properly apply the exception contained in the Town's merger ordinance. We disagree.

■ The Gilford Zoning Ordinance, like many zoning ordinances in New Hampshire, contains a provision that requires the merger of substandard contiguous undeveloped lots in common ownership. 15 P. LOUGHLIN, NEW HAMPSHIRE PRACTICE, LAND USE PLANNING AND ZONING § 11.07, at 157 (3d ed. 2000). Merger provisions generally require the combination of two or more undeveloped lots of substandard size that are held in common ownership in order to meet the minimum square-footage requirements of a zoned district. *See* 3 A.H. RATHKOPF ET AL., RATHKOPF'S THE LAW OF ZONING AND PLANNING § 49:16, at 49-31 (2005). Substandard contiguous lots generally cannot be developed as individual non-conforming lots unless the landowner applies for a variance or an exception. *R.J.E.P. Associates v. Hellewell*, 560 A.2d 353, 355 (R.I. 1989).

Because there was no evidence presented in this case that either the present or former owners of lots 9 and 10 had ever applied to the planning board for a voluntary merger, the only way the property could have been merged was pursuant to the Town ordinance's automatic merger provision. *See* GILFORD TOWN ORDINANCE § 9.1.1. On appeal, Aichinger challenges the validity of the provision. Essentially, she contends that automatic merger conflicts with RSA 674:39-a and is, therefore, unenforceable. Relying upon legislative history, Aichinger argues that under RSA 674:39-a, the decision to merge nonconforming lots is made solely by the landowner, and such lots cannot be automatically merged by local zoning provisions.

We are the final arbiter of the intent of the legislature as expressed in the words of a statute considered as a whole. *See Town of Amherst v. Gilroy*, 157 N.H. 275, 277 (2008). We review the trial court's interpretation of a statute *de novo. See Verizon New England v. City of Rochester*, 151 N.H. 263, 266 (2004). "When interpreting the language of a statute, we ascribe the plain and ordinary meaning to the words used and discern the legislative intent from the statute as written. We will not consider what the legislature might have said, or add language that the legislature did not see fit to include." *Guy v. Town of Temple*, 157 N.H. 642, 653 (2008) (citation omitted). When a statute's language is plain and unambiguous, we need not examine its legislative history. *Appeal of Weaver*, 150 N.H. 254, 255 (2003).

RSA 674:39-a reads, in pertinent part, as follows:

> **Voluntary merger.** Any owner of 2 or more contiguous preexisting approved or subdivided lots or parcels who wishes to merge them for municipal regulation and taxation purposes may do so by applying to the planning board or its designee. Except where such

merger would create a violation of then-current ordinances or regulations, all such requests shall be approved, and no public hearing or notice shall be required. No new survey plat need be recorded, but a notice of the merger, sufficient to identify the relevant parcels and endorsed in writing by the planning board or its designee, shall be filed for recording in the registry of deeds, and a copy mailed to the municipality's assessing officials. No such merged parcel shall thereafter be separately transferred without subdivision approval.

RSA 674:39-a (2008).

The plain language of RSA 674:39-a gives property owners the right to merge contiguous lots, but nothing in its language precludes a town from automatically merging such lots pursuant to its zoning ordinance. Because we find nothing ambiguous about the statutory language, we decline Aichinger's invitation to examine the statute's legislative history. *See Weaver*, 150 N.H. at 255. We agree with the trial court that RSA 674:39-a governs voluntary mergers by owners of two or more parcels of land, but does not prohibit a municipality from adopting an ordinance providing for the automatic merging of lots for zoning purposes.

Having determined that nothing in RSA 674:39-a precludes a town from requiring the merger of contiguous, nonconforming lots in common ownership, we now consider whether the trial court erred when it ruled that the Town had automatically merged the property pursuant to its zoning ordinance. "We will affirm the trial court's factual findings unless they are unsupported by the evidence and will affirm the trial court's legal rulings unless they are erroneous as a matter of law." *Morgenstern v. Town of Rye*, 147 N.H. 558, 561 (2002) (citations omitted).

The evidence in the record supports the trial court's conclusion that Aichinger's lots had merged. First, the evidence shows that prior to entering into the Agreement with Aichinger, the Town had treated her property as a single lot. While the parcels are described separately in the deed, the property is recorded as a single lot in the town assessing records and the Governor's Island Club Records. Furthermore, Aichinger acquired the property via a single deed. Finally, the very same property at issue here was at issue in a case we decided over twenty years ago. *See Governor's Island Club v. Town of Gilford*, 124 N.H. 126 (1983), *abrogated by Simplex Technologies v. Town of Newington*, 145 N.H. 727 (2001). While the issue we decided in *Governor's Island* is not the same one we are presented with today, the decision is significant for the purposes of our merger analysis because one of the parcels at issue in that case was the same shorefront

parcel that is at issue in this case. The recitation of the facts and legal analysis in *Governor's Island* make clear that the property has been in common ownership since 1947, that the defendant property owner in *Governor's Island* recognized that the shorefront parcel was a single lot, and that the shorefront parcel was at that time being taxed by the Town as a single lot. Indeed, the trial court in this case relied upon the *Governor's Island* decision in ruling that lots 9 and 10 were a single merged lot.

Aichinger argues, however, that her property falls within an exception to the merger requirement contained in the ordinance. Before turning to the question of whether the exception applies, we note that the merger provision at issue in this case has been amended several times since the ordinance was initially adopted in 1962. On appeal, the parties dispute which version of the zoning ordinance applies to this case. The Town asserts that we should apply an earlier version of the ordinance, which does not contain the exception upon which Aichinger now relies. The record indicates, however, that during the proceedings in superior court, the parties and the trial court assumed that the current version of the ordinance applied to Aichinger's property. Because the issue was not litigated before the trial court, we decline to consider whether an earlier version applies. Therefore, we apply the current version of the ordinance, which reads, in pertinent part, as follows:

> *Contiguous Nonconforming Lots* — When two (2) or more lots of record have the same owner and are contiguous, and one (1) or more of the lots is nonconforming to this ordinance as to size, dimension or frontage, the owner shall be required to merge all contiguous, nonconforming lots with contiguous lots under similar ownership until such contiguous, nonconforming lots are made conforming unless an exception is provided for below.

> (a) *Exception* — If at the time the lots described above become owned by the same owner, there is a lawful and preexisting principal use listed in Article 4 on each lot, the owner shall not be required to merge the nonconforming lot or lots.

> (b) *Exception* — Whenever lots are protected from merger by the provisions of RSA 674:39, the owner shall not be required to merge the lots.

GILFORD ZONING ORDINANCE § 9.1.1.

Aichinger argues that the exception to the merger requirement providing that an owner is not required to merge contiguous lots if there is a "lawful and preexisting principal use" on each lot applies to her property.

GILFORD ZONING ORDINANCE § 9.1.1(a). The trial court's order does not address whether the exception applies, perhaps because Aichinger did not specifically argue for the applicability of the exception at trial. However, Aichinger did argue in her motion to reconsider that the trial court had failed to consider the exception. Implicit in the trial court's denial of the motion is a ruling that the exception does not apply. Therefore, we must determine whether the evidence supports the trial court's conclusion that the exception does not apply because the garage with attached guest house situated on lot 9 did not constitute a "preexisting principal use" within the meaning of the ordinance.

The construction of the terms of a zoning ordinance is a question of law, which we review *de novo*. *See Anderson v. Motorsports Holdings*, 155 N.H. 491, 494 (2007). Interpreting an ordinance requires us to ascertain the intent of the enacting body. *See Trottier v. City of Lebanon*, 117 N.H. 148, 150 (1977). "[T]he words used in a zoning ordinance will be given their ordinary meaning unless it appears from their context that a different meaning was intended. We determine the meaning of a zoning ordinance from its construction as a whole, not by construing isolated words or phrases." *Feins v. Town of Wilmot*, 154 N.H. 715, 719 (2007) (citations and quotations omitted).

To determine the meaning of "lawful and preexisting principal use," we turn first to the definition section of the ordinance, which defines "[p]rincipal use" as "[t]he sole, primary, or main use of a lot or building." GILFORD ZONING ORDINANCE art. 3, at 16 (2008). The only relevant permitted "principal use" in the SFR zone listed in the ordinance is "single family residence." *Id.* art. 4. The ordinance defines a "single family residence" as a "[s]tructure for the residence of one (1) family." *Id.* § 4.7.2(g). In contrast, the ordinance lists a number of "accessory uses" that are also permitted in the SFR district, including "accessory building[s]." *Id.* § 4.6. An "accessory building" is a "[g]arage, child's playhouse, greenhouse, tool shed, or shelter, used primarily by occupants in the main building." *Id.* § 4.7.6(b).

Aichinger asserts that the record "clearly shows that there were separate and distinct dwellings on Lots 9 and 10 before the Town of Gilford adopted its zoning ordinance." Thus, according to Aichinger, there was a separate principal use on each of the lots. We disagree.

We conclude from our review of the record that the evidence supports the trial court's conclusion that the structure that existed on lot 9 was not a single-family residence, and, therefore, not a "lawful preexisting principal use." While the record shows that the structure is insulated and heated and includes a kitchen and bathroom, Aichinger testified that it was used primarily as a guest house. Indeed, Aichinger applied for her amended

building permit on the grounds that she was entitled to rebuild her "guest home." Surveys drawn up for Aichinger in preparation for the installation of a new septic system and driveway label the building, "existing garage and storage," or "existing camp." The record contains no evidence that the structure was ever used as a single-family residence. To the contrary, the evidence showed that the structure had an accessory, non-principal use because it was used in conjunction with the house on lot 10. Therefore, the structure was an "accessory building" because it was a "shelter, used primarily by occupants in the main building." GILFORD ZONING ORDINANCE § 4.7.6(b). Therefore, the record reasonably supports the trial court's conclusion that the "lawful and preexisting principal use" exception to the automatic merger provision does not apply.

## IV

Having determined that the trial court did not err when it ruled that Aichinger's property had merged pursuant to the automatic merger provision of the ordinance, we next determine whether the status of the lot changed based upon the representations of town officials and the Agreement between Aichinger and the Town. Aichinger argues on appeal that the trial court erred when it found that the doctrine of municipal estoppel did not bar the Town from enforcing its merger ordinance. We disagree.

 The doctrine of municipal estoppel is an equitable doctrine that has been applied to municipalities "to prevent unjust enrichment and to accord fairness to those who bargain with the agents of municipalities for the promises of the municipalities." *Thomas v. Town of Hooksett*, 153 N.H. 717, 721 (2006). The elements of municipal estoppel are:

> first, a false representation or concealment of material facts made with knowledge of those facts; second, the party to whom the representation was made must have been ignorant of the truth of the matter; third, the representation must have been made with the intention of inducing the other party to rely upon it; and fourth, the other party must have been induced to rely upon the representation to his or her injury.

*Id.* Moreover, a party's reliance upon the representation must be reasonable. *Id.* at 722. Each element of estoppel requires a factual determination. *Id.* at 721. We will uphold the trial court's decision unless it is not supported by the evidence or is erroneous as a matter of law. *Id.*

The trial court concluded that Aichinger failed to prove the first and fourth elements of her estoppel claim. We need not consider the trial court's ruling on the first element, however, because we conclude that the trial

court's finding that Aichinger failed to prove that she reasonably relied upon the inaccurate information is supported by the evidence.

 A municipal estoppel claim requires a showing that a party has been induced to rely upon the misrepresentation to his or her injury. *Id.* at 721. The reliance upon the misrepresentation must be reasonable. *Id.* at 722. "Reliance is unreasonable when the party asserting estoppel, at the time of his or her reliance or at the time of the representation or concealment, knew or should have known that the conduct or representation was improper, materially incorrect or misleading." *Id.* The evidence supports the trial court's conclusion that Aichinger knew or should have known that the representations made by town officials were materially incorrect, and, thus, any reliance was unreasonable.

First, the record supports the trial court's finding that Aichinger was aware of our 1983 decision in *Governor's Island,* which treated the property as a single lot more than seventeen years before Aichinger purchased her property. Aichinger testified that she believed that when she first approached Town officials in the spring of 2006, she mentioned to the Director of Planning that the Governor's Island Club had once sued a previous owner of the property. Therefore, Aichinger could have investigated and discovered that published opinion. Second, the record supports the trial court's finding that it was unreasonable for Aichinger to rely upon the representation of the Director of Planning that the Town's merger requirement was, due to a court challenge, "no longer on the books." A review of the ordinance, as the trial court found, would have revealed that section 9.1.1 was still in effect and applicable to the property. *See Thomas,* 153 N.H. at 722 (reliance on erroneous information by town code enforcement officer and a planning board member is unreasonable where a statute squarely addresses the issue).

Next, Aichinger notes that her Agreement with the Town that the property consists of two separate and distinct parcels of land did not alter the trial court's conclusion that she owns a single lot. She argues that this was error, because the court thereby implicitly ruled that the Town was not bound by the terms of the Agreement. We need not decide whether such a ruling is implicit in the trial court's order. Sutton, who was not a party to the Agreement and is therefore not bound by it, brought a petition for declaratory judgment and request for injunctive relief pursuant to RSA 676:15 (2008). The trial court was therefore charged with determining the nature of Sutton's rights, not with the nature of Aichinger's rights pursuant to her Agreement with the Town. We cannot say that Sutton's statutorily protected rights are trumped by an Agreement to which she was not a party.

## V

Aichinger argues that the trial court erroneously denied her request to reopen the hearing to accept evidence on the issues of municipal estoppel and merger. She contends that the trial court's order on her motion for summary judgment resolved certain issues in her favor, but that because the trial court clarified on the morning of trial that those issues had not been resolved in her favor, she did not have the opportunity to present evidence on those issues.

■■■ According to Aichinger, the trial court's order on her motion for summary judgment resolved the issue of merger in her favor and upheld the right of the Board of Selectmen to enter into the Agreement. She argues that the trial court modified these rulings in its subsequent order on the motion to dismiss when it stated that it had not ruled that the lots had been "demerged." Because the order on the motion to dismiss was issued on the morning of the trial, Aichinger contends she had relied upon the summary judgment order in preparing for trial and was therefore not prepared to present evidence on the issues of municipal estoppel and merger. She argues that the trial court's refusal to reopen denied her due process and resulted in an unconstitutional taking. We conclude that because Aichinger's interpretation of the trial court's order on the motion for summary judgment was unreasonable, the trial court did not err in denying her a further opportunity to present evidence on the issues of merger and municipal estoppel at the hearing.

Aichinger relies upon the following language in the trial court's order on the motion for summary judgment:

> Unquestionably, the town was acting within its discretion in forming the Agreement with Ms. Aichinger.
>
> . . . .
>
> The undisputed facts would not support a finding of bad faith as a matter of law. Here, the town entered the Agreement to reduce a litigation risk, where there existed a non-frivolous claim of *estoppel* and damages based on the Planning Director's error.

These statements were made in the context of the court's order granting summary judgment to Aichinger on Sutton's request for a writ of mandamus. The statements were relevant to the trial court's conclusion that mandamus would not be appropriate because the town officials involved were acting within their discretion, and not in bad faith, when they entered into the Agreement. The trial court's order dismissing the mandamus claim

ruled only that mandamus, as an extraordinary remedy, was not appropriate in this case to compel the Town to enforce the ordinance. It did not speak to Sutton's right, as an abutter, to do so. Nowhere in the order does the trial court suggest that it had resolved the question of merger in Aichinger's favor, that the existence of the Agreement would bar Sutton's claims, or that the Town would be municipally estopped from enforcing the ordinance. Indeed, elsewhere in the same order, the trial court denied Aichinger's request for summary judgment on the petition for declaratory judgment and request for injunctive relief. It should have been clear to Aichinger that the trial court had not conclusively resolved the questions of merger, municipal estoppel, or what effect, if any, the Agreement would have on Sutton's claims. Therefore, Aichinger alone bears responsibility for the fact that she did not present evidence on these issues at the hearing.

To the extent that Aichinger argues that the superior court's ruling on the issue of merger effectuated a taking of her property in violation of Part I, Article 12-a of the New Hampshire Constitution, we conclude that the argument is not sufficiently developed to warrant appellate review. *Trachy v. LaFramboise*, 146 N.H. 178, 181 (2001).

VI

In conclusion, we reverse the trial court's ruling denying Aichinger's motion to dismiss Sutton's request for injunctive relief to prevent the construction and development of former lot 9, but affirm the trial court's ruling that the exhaustion doctrine does not bar Sutton's request for declaratory judgment that Aichinger owns a single, merged, lot. We also affirm the trial court's rulings that: (1) Aichinger owns a single, merged lot; (2) the doctrine of municipal estoppel does not bar the Town from enforcing its merger ordinance; and (3) Aichinger was not entitled to reopen the merits hearing to offer evidence regarding the issues of municipal estoppel and merger. Nothing in this opinion should be construed to bar Aichinger from, or relieve Aichinger of the responsibility for, obtaining any requisite municipal approvals if she wishes to treat the property as two lots.

In light of our holding today, we conclude that it is unnecessary to address whether it was proper for the trial court to dismiss Sutton's request for a writ of mandamus, and that Aichinger's objection to the Town of Gilford's reply brief is moot. Aichinger's request for attorney's fees is denied.

*Reversed in part; affirmed in part.*

DUGGAN, J., concurred; BROCK, C.J., retired, specially assigned under RSA 490:3, concurred.