Merrimack
No. 2012-039

TOWN OF NEWBURY

v.

STEVEN P. LANDRIGAN *& a.*

Argued: April 11, 2013
Opinion Issued: August 21, 2013

*Upton & Hatfield, LLP,* of Concord (*Barton L. Mayer* on the brief and orally), for the petitioner.

*D'Amante, Couser, Pellerin, & Associates, P.A.,* of Concord (*Bruce J. Marshall* on the brief and orally), for the respondents.

BASSETT, J. The respondents, Steven and Philomena Landrigan, appeal an order of the Superior Court (*McNamara*, J.) finding that they unlawfully subdivided their property and granting the request of the petitioner, the Town of Newbury (Town), for injunctive relief and the imposition of a $2,000 fine. *See* RSA 674:35 (2008) (amended 2012); RSA 676:15 (2008); RSA 676:16 (2008). The respondents argue that the trial court erred in finding that their conduct and that of their predecessors had merged two non-conforming parcels into a single lot. We affirm.

The trial court found, or the record supports, the following facts. In 1935, the Town deeded two contiguous lots, known as lot 3 and lot 4, to a private party (the original owner). Thereafter, the Town also deeded to the original owner four small "cottage lots" adjacent to lots 3 and 4.

In 1961, the original owner recorded a plan depicting lots 3, 4 and the cottage lots. The plan identifies boundary lines separating the "cottage lots"; however, it does not show an internal boundary line between lots 3 and 4. In 1972, the original owner deeded the southern portion of lot 4 to an abutter. In 1973, the Town deeded to the original owner an adjacent triangular parcel of land. Around this time, the Town began assessing lot 3, the remaining portion of lot 4, the "cottage lots," and the triangular parcel of land as a single lot (the property).

Subsequently, the property was transferred by deed three times. Each deed contained an identical metes and bounds description that encompassed the remaining portion of lot 4, lot 3, the four "cottage lots," and the triangular parcel. The property description did not refer to any internal boundary lines. Each deed in the chain of title contained a "meaning and intending" clause that referred to the previous deed.

In 2004, the property was transferred by deed to the respondents. That deed contained the same metes and bounds description as the three prior deeds and a "meaning and intending" clause referring to the immediately preceding deed. At the time the respondents purchased the land, they understood that they were buying a single lot. Later that year, they applied for a building permit. In that application, they described setbacks measured from the property's exterior boundaries and not from the 1935 lot line between lots 3 and 4.

In 2006, the respondents recorded a survey plat of the property, which shows lots 3 and 4 separated by a dotted line labeled "Old Line." In 2008, they recorded two more survey plats, each of which showed a solid line separating lots 3 and 4, which was not labeled. In 2010, the respondents executed two deeds purporting to transfer the property to themselves as separate lots. At no time did the respondents seek or obtain subdivision approval, nor were the survey plats recorded by the respondents approved by the planning board.

In response to the deeding of the property as separate lots, the Town filed an action in superior court claiming that the respondents had subdivided their property without prior planning board approval in violation of RSA 676:16. The Town argued that the conduct of the prior owners caused lots 3 and 4 to merge, and that consequently, when the respondents separately conveyed lots 3 and 4 to themselves without planning board approval, they unlawfully subdivided the property. The respondents countered that they did not need planning board approval to subdivide the property because the lots had never merged.

Following an evidentiary hearing, the court ruled that the respondents had unlawfully subdivided their property in violation of RSA 674:35 and RSA 676:16, finding that "[g]iven the manner in which the current and former owners have treated the property, it has been merged and treated as a single lot for 50 years or more." The trial court reasoned that "[t]he deeds involving the property do not support the [respondents'] position that they currently own 2 lots" and noted that "[a]t the time the [respondents] purchased the property, they believed they were securing a single parcel of land." Alternatively, the trial court relied upon the doctrine of estoppel to find that treating the property as separate lots would be inequitable because "[s]ince the early [1970s] the [respondents] and their predecessors have [allowed] the Town of Newbury to tax their property as a single building lot."

On appeal, the respondents argue that the trial court erred by: (1) applying the doctrine of merger by conduct; (2) concluding that they had improperly subdivided their property; (3) determining that their chain of title did not support their contention that the property consisted of separate lots of record; (4) relying upon the testimony of the Town's expert to construe a survey prepared by the respondents' expert; (5) finding that the historical lots comprising their property had been merged for fifty years or more; and (6) ruling that they were estopped from treating, and that it would be inequitable to treat, the property as separate lots.

We construe the respondents' first five arguments as challenging the trial court's application of the merger by conduct doctrine and the weight and sufficiency of the evidence to support its decision. "In a land use case, we will uphold the decision of the superior court unless it is not supported by the evidence or is legally erroneous." *Town of Windham v. Lawrence Sav. Bank*, 146 N.H. 517, 519 (2001) (quotation and brackets omitted). For the reasons that follow, we conclude that the trial court's determination was neither unsupported by the evidence nor legally erroneous.

Pursuant to RSA 674:35, the Town has granted its planning board power to regulate the subdivision of property. *See* RSA 674:35, I, II. Therefore, under RSA 676:16, any person who transfers land in the Town without first

obtaining any required subdivision approval from the planning board is subject to a penalty of $1000 for each lot transferred. The respondents did not obtain such approval. They contend that subdivision approval was not necessary because the property always has been and continues to be two lots. They assert that the trial court erred in ruling that their conduct and that of their predecessors merged the lots because the common law of merger by conduct has been abolished. We disagree.

The doctrine that landowners' conduct can result in the merger of adjacent lots is well established in New Hampshire. In *Town of Seabrook v. Tra-Sea Corp.*, 119 N.H. 937 (1979), we stated that an owner of adjacent non-conforming grandfathered lots may lose that grandfathered status and cause the merger of the non-conforming lots "by abandoning the property or abolishing individual lot lines," although we concluded that the owner in that case had not done so. *Tra-Sea Corp.*, 119 N.H. at 942-43. In *Robillard v. Town of Hudson*, 120 N.H. 477 (1980), we held that an owner's conduct had resulted in the merger of two non-conforming lots. *Robillard*, 120 N.H. at 479. That owner had obtained a building permit for a duplex relying on the combined frontage and area of the two contiguous, non-conforming lots. *Id.* at 478. We held that such conduct "effectively erased the individual lot lines" and resulted in the merger of the two prior non-conforming lots. *Id.* at 480.

The respondents read *Sutton v. Town of Gilford*, 160 N.H. 43 (2010), to overrule our prior cases and to establish that the only way lots can be merged is when "either the present or former owners [apply] to the local planning board for a voluntary merger or the lots [are] merged pursuant to a local ordinance specifying the conditions of merger." In *Sutton*, however, we addressed a related but distinct issue — whether RSA 674:39-a, which gives property owners the right to merge contiguous lots, precludes a town from automatically merging lots pursuant to its zoning ordinance. *Sutton*, 160 N.H. at 54-55. We did not address, nor did the facts implicate, the doctrine of merger by conduct. *See id.* at 46-50, 53-58. Therefore, *Sutton* does not abrogate the longstanding rule that owners can effectuate a merger of contiguous, non-conforming lots, independent of any town ordinance, "by behavior which results in an abandonment or abolition of the individual lot lines." *Robillard*, 120 N.H. at 479 (quotation omitted).

The respondents also argue that the evidence before the trial court was insufficient to find that their conduct and that of their predecessors in title had resulted in the merger of lots 3 and 4. We disagree. "We will affirm the trial court's factual findings unless they are unsupported by the evidence and will affirm the trial court's legal rulings unless they are erroneous as a matter of law." *Sutton*, 160 N.H. at 55 (quotation omitted). "[W]e defer to

the trial court's judgment on such issues as resolving conflicts in the testimony, measuring the credibility of witnesses, and determining the weight to be given evidence," *id.*, mindful that in evaluating evidentiary weight and credibility, the trial court is "not required to believe even uncontroverted evidence," *Town of Atkinson v. Malborn Realty Trust*, 164 N.H. 62, 67 (2012). "It is within the province of the trial court to accept or reject, in whole or in part, whatever evidence was presented, including that of the expert witnesses." *Cook v. Sullivan*, 149 N.H. 774, 780 (2003). Here, the record contains ample support for the trial court's conclusion that the respondents and their predecessors abandoned the lot line described in the 1935 deed.

 Beginning in 1975, the deeds in the respondents' chain of title uniformly describe the property by metes and bounds as a single "tract or parcel of land." The respondents argue that these property descriptions should be read in light of "meaning and intending clauses" contained in the deeds, which, they contend, refer back to the 1935 deed and show that the property is comprised of two lots. We agree with the Town, however, that an unambiguous metes and bounds description will prevail over a general reference to a prior deed in a "meaning and intending clause." *See Finlay v. Stevens*, 93 N.H. 124, 129 (1944). Moreover, as the trial court observed, "lot 4 as it existed in the 1935 conveyance from the Town to [the original owner], no longer exist[s]." Part of lot 4 was sold in 1972, and, as the respondents' expert admitted at trial, the "cottage lots" and the triangular parcel have since been incorporated into the subject property.

Furthermore, at least three plans were filed at the registry of deeds depicting the property as a single lot. The first plan, recorded in 1961, does not show a boundary line between lots 3 and 4. A second plan, filed in 1972, identifies the internal boundary between lots 3 and 4 with a dashed line while designating the perimeter with a solid line. In 2006, the respondents recorded a survey plat that again depicts the original internal boundary with a dashed line, labeled "Old Line," bisecting a larger single lot. The Town's expert testified that "[w]hen you have a plan that shows solid lines around the perimeter of the property with internal dash lines, the internal lines indicate that they've been abandoned as to the property being separate parcels." In addition, the 2006 plat refers to the entire property as a single parcel and states its acreage as a whole.

 The respondents correctly note that the 1961 plan contains inaccuracies and, argue that, therefore, the trial court should not have relied upon it. However, the inaccuracies are not material, and the 1961 plan is probative of the original owner's intention to abandon the internal boundary lines. Further, it was the province of the trial court to determine the

weight to give this evidence. *Cook*, 149 N.H. at 780. Similarly, we reject the respondents' argument that the trial court erred in not adopting the opinion of their expert, who drafted the 2006 survey plat, as to the meaning of the dashed line. The trial court is free to accept or reject expert testimony and to determine the weight accorded to it. *Id.* It is "not required to believe even uncontroverted testimony." *Malborn Realty Trust*, 164 N.H. at 67. Upon this record, we cannot say that the trial court erred when it chose not to credit the testimony of the respondents' surveyor.

Additional evidence in the record demonstrates that for many decades the respondents and their predecessors treated the property as a single lot. The record shows that a driveway accessing a house on the property crosses both of the lots described in the 1935 deed. *See Roberts v. Town of Windham*, 165 N.H. 186 (2013). Moreover, not only did the respondents admit that when they purchased the property they believed that they were purchasing one lot, they treated the property as a single lot when they applied to the Town for building permits. The respondents argue that, because the Town drafted the building permit application form, it would be "unreasonable and unconscionable" for the court to rely on the representations made in applications. We are not persuaded; the fact remains that, regardless of the origin of the form itself, the respondents described the setbacks measured from the external boundary of their property, and not from the 1935 line between lots 3 and 4.

Thus, we conclude that the evidence supports the trial court's finding that, as early as 1961, when the plot plan showing no boundary line between lots 3 and 4 was recorded, the respondents and their predecessors, through their conduct, abolished the line between the two lots described in the 1935 deed. While the respondents are correct that the trial court's order is inconsistent regarding the precise date of the merger, there is ample support in the record for the court's finding that the lots had been merged for at least several decades. Accordingly, we uphold the trial court's ruling that the respondents owned a single parcel in 2008 when they conveyed lots 3 and 4 separately, thereby subdividing their property in violation of RSA 674:35 and RSA 676:16.

Having found that the trial court properly ruled that the former and present owners' conduct resulted in the merger of the subject parcels, we need not address the respondents' arguments that the trial court erred in its ruling on estoppel.

*Affirmed.*

DALIANIS, C.J., and HICKS, CONBOY and LYNN, JJ., concurred.