NOTICE:  This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press.  Errors may be reported by email at the following address: reporter@courts.state.nh.us.  Opinions are available on the Internet by 9:00 a.m. on the morning of their release.  The direct address of the court's home page is: https://www.courts.nh.gov/our-courts/supreme-court

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Public Utilities Commission
No. 2022-0146


APPEAL OF LIBERTY UTILITIES (ENERGYNORTH NATURAL GAS) CORP.,
D/B/A LIBERTY
(New Hampshire Public Utilities Commission)

Argued: February 9, 2023
Opinion Issued: November 15, 2023

Pastori | Krans, PLLC, of Concord (Terri L. Pastori and Ashley D. Taylor on the brief, and Terri L. Pastori orally), for the petitioner.


John M. Formella, attorney general, and Anthony J. Galdieri, solicitor general (Christopher G. Aslin, senior assistant attorney general, on the brief and orally), for the New Hampshire Department of Energy.


Donald M. Kreis, consumer advocate, on the brief, for the Office of the Consumer Advocate.

HANTZ MARCONI, J.  The petitioner, Liberty Utilities (EnergyNorth Natural Gas) Corp., d/b/a Liberty (Liberty), appeals an order of the New Hampshire Public Utilities Commission denying Liberty's request to recover development costs related to a proposed natural gas pipeline and tank system, the Granite Bridge project.  The respondents, the New Hampshire Department

of Energy and the Office of the Consumer Advocate, appear in opposition to this appeal. We affirm.

I

The following facts either were stated in the Public Utilities Commission's orders or are drawn from the contents of the documents in the certified record before us. This case arises from an unrealized construction project. Liberty is a utility company that provides natural gas to thousands of customers in parts of New Hampshire. According to Liberty, it relies solely on Tennessee Gas Pipeline Co., LLC (Tennessee Gas Pipeline) for its gas supply in southern and central New Hampshire. Liberty executives testified that Liberty sought more supply from Tennessee Gas Pipeline because Liberty was facing increased demand. Liberty and Tennessee Gas Pipeline agreed to an arrangement whereby Liberty would receive additional gas from a second pipeline, but Tennessee Gas Pipeline cancelled that arrangement. In response, Liberty began to explore other options, and eventually decided to construct its own pipeline and tank system, called the Granite Bridge project. During that time, however, Liberty continued to assess the viability of increasing its supply with Tennessee Gas Pipeline. As part of its efforts to construct Granite Bridge, Liberty spent approximately $9.1 million in "development costs." Liberty estimated that $7.5 million of that amount consisted of engineering, environmental, consulting, internal labor, commission related costs, and land costs. Liberty executives specified that the costs included preliminary designs, environmental assessments, outside consulting services, and options to purchase land, among others. Despite those costs, according to Liberty, it would have been years before Liberty broke ground on Granite Bridge. Later, Tennessee Gas Pipeline offered Liberty more space on its pipeline at a cheaper rate than the projected cost of Granite Bridge. Liberty accepted that offer, and then cancelled the Granite Bridge project.

After Liberty cancelled Granite Bridge, it sought to recover approximately $7.5 million in costs through a temporary rate increase to its customers. The Public Utilities Commission determined that Liberty could not recover those costs through its rates because they were "associated with construction work" that was unfinished, and thus barred by RSA 378:30-a. Liberty filed a motion for rehearing, which the Public Utilities Commission denied.

This appeal followed.

II

RSA chapter 541 governs our review of Public Utilities Commission decisions. See RSA 378:31 (2009). Under RSA 541:13, we will not set aside the Public Utilities Commission's order except for errors of law, unless we are satisfied, by a clear preponderance of the evidence, that it is unjust or

2

unreasonable.  RSA 541:13 (2021).  The Public Utilities Commission's findings of fact are deemed prima facie lawful and reasonable.  Id.  In reviewing the Public Utilities Commission's findings, our task is not to determine whether we would have found differently or to reweigh the evidence, but rather, to determine whether the findings are supported by competent evidence in the record.  See Appeal of Malo, 169 N.H. 661, 668 (2017).  We review the Public Utilities Commission's rulings on issues of law de novo.  See Appeal of Pennichuck Water Works, 160 N.H. 18, 26 (2010).

Liberty asserts that its costs are recoverable under RSA 378:30-a because construction never began on Granite Bridge.  See RSA 378:30-a (2009).  Determining whether Liberty's costs are recoverable requires interpreting RSA 378:30-a.  We first look to the language of the statute itself, and, if possible, construe that language according to its plain and ordinary meaning.  Doe v. Attorney General, 175 N.H. 349, 352 (2022).  We interpret the statute as written and will not consider what the legislature might have said or add language that the legislature did not see fit to include.  Id.  The legislature is not presumed to waste words or enact redundant provisions and, whenever possible, every word of a statute should be given effect.  Id.  We construe all parts of a statute together to effectuate its overall purpose and avoid an absurd or unjust result.  Id.  Moreover, we do not consider words and phrases in isolation, but rather within the context of the statute as a whole.  Id.

We begin with the text of the statute to determine whether Liberty's costs are recoverable:

> Public utility rates or charges shall not in any manner be based on the cost of construction work in progress. At no time shall any rates or charges be based upon any costs associated with construction work if said construction work is not completed. All costs of construction work in progress, including, but not limited to, any costs associated with constructing, owning, maintaining or financing construction work in progress, shall not be included in a utility's rate base nor be allowed as an expense for rate making purposes until, and not before, said construction project is actually providing service to consumers.

RSA 378:30-a.

The plain language of RSA 378:30-a prohibits Liberty from recovering its costs for Granite Bridge through its rates.  We focus on the second sentence because its breadth is broadest.  See Appeal of Public Serv. Co. of N.H., 125 N.H. 46, 52 (1984).  The second sentence prohibits recovering "any costs

associated with construction work if said construction work is not completed." RSA 378:30-a.  That sentence broadly restricts recovering costs because a cost need only be "associated with" uncompleted construction work for it to be unrecoverable.  Id.; see Appeal of Public Serv. Co. of N.H., 125 N.H. at 54-55.  Here, Liberty sought to recover approximately $7.5 million in costs specifically related to its plan to construct Granite Bridge.  Executives for Liberty testified that these costs included engineering, environmental, and consulting costs, among others, and Liberty itself deemed them development costs.  They testified that the money was spent on, among other things, preliminary designs, environmental assessments and compliance, cost analysis, regulatory approvals, and options to purchase land and acquire easements.  Those costs were associated with Granite Bridge because they were steps in the process to construct its pipeline and tank system, a physical structure.  See Appeal of Public Serv. Co. of N.H., 125 N.H. at 54.

Liberty asserts that the Public Utilities Commission ignored the word "work" in the second sentence of RSA 378:30-a, improperly expanding the statute's reach.  By doing so, Liberty contends, the Public Utilities Commission barred costs without giving effect to the entirety of the statute.  The statute bars "costs associated with construction work," and Liberty contends no "construction work" occurred here.  Because interpreting RSA 378:30-a is a legal question, we review the Public Utilities Commission's order de novo.  See Appeal of Pennichuck Water Works, 160 N.H. at 26.  Interpreting the entirety of the second sentence still leads to the same conclusion, regardless of whether the Public Utilities Commission ignored a word in its analysis.  We have already interpreted "construction work" to refer to a physical structure.  Appeal of Public Serv. Co. of N.H., 125 N.H. at 53-54.  Granite Bridge was to consist of a pipeline and tank system, a physical structure.  See id.  While no physical structure was built, Liberty's costs remained "associated with" one because Liberty incurred costs specifically related to its plan to build a physical structure.

Nevertheless, Liberty contends that its costs should be recoverable because it incurred them as part of its statutory obligation to evaluate its potential least cost option.  As the Department of Energy pointed out, however, these "costs would be capitalized if the project had been placed in service" and, as the Public Utilities Commission found, are not "least-cost planning costs."  The Public Utilities Commission found: "As pointed out by the [Office of the Consumer Advocate] and [the Department of] Energy, these costs were not routine planning to determine the least-cost course of action, but were costs incurred in furtherance of a specific project, Granite Bridge."  As the Public Utilities Commission concluded, "[t]he operative question is whether the costs were 'associated with construction,' . . . ."  "Here, these costs were plainly associated with the construction of the Granite Bridge project."  The Granite Bridge project was "not completed" because it was never constructed.  RSA

4

378:30-a.  Accordingly, Liberty cannot recover its costs when it cancelled the project and consumers derived no benefit.  See id.; Appeal of Public Serv. Co. of N.H., 125 N.H. at 54-55.

Next, Liberty argues that our decision in Appeal of Public Service Co. of New Hampshire supports its contention that for the second sentence to bar recovery of costs actual construction must have begun.  We disagree.  In Appeal of Public Service Co. of New Hampshire, we determined that RSA 378:30-a barred the utility company from recovering, through rates, its investment in a plant which was abandoned during construction.  See Appeal of Public Service Co. of N.H., 125 N.H. at 54-55.  The utility acquired an interest in a project to build a nuclear electric power generating plant and had invested $15,926,729 in the construction when the owners cancelled the project.  Id. at 48-49.  When the utility sought to recover these costs through ratemaking, we held that RSA 378:30-a barred it from doing so.  Id. at 54-55.  We reasoned that the company's costs were "associated" with construction work because the company invested in constructing the facility.  Id. at 54.  This decision, Liberty contends, limits the meaning of "associated with construction work" to projects where actual construction has begun.

The issue in Appeal of Public Service Co. of New Hampshire, however, was whether costs associated with abandoned construction could be recovered for that part of the project that had been completed before abandonment.  Id. at 51.  The nature and timing of the costs incurred were not issues in that case.  See id.  In particular, we were not provided with a breakdown of the costs sought to be recovered, but assumed that the investment included the cost of the "actual construction and the cost of money used to pay for it."  Id.  Without a breakdown of the costs, we cannot determine whether Appeal of Public Service Co. of New Hampshire held that pre-construction costs were "associated with construction work."  See id.  Thus, we had no occasion to decide in that case whether pre-construction costs alone were costs "associated with construction work."  Without such an occasion, Appeal of Public Service Co. of New Hampshire did not limit "costs associated with construction work" to costs incurred where actual construction began.  See id. at 54, 55.

Turning to Liberty's argument that the first sentence of RSA 378:30-a does not apply, we agree because the "construction work" was not "in progress."  Regarding the third sentence, Liberty contends that it is inapplicable because it addresses "construction work in progress" and no "construction work in progress" occurred here.  Because "construction work in progress" must be different from "construction work," the examples in the third sentence are irrelevant to interpreting the second sentence.  We also agree with Liberty that the third sentence does not apply, but disagree that its examples are irrelevant to our analysis of the second sentence.  The third sentence states:

5

> All costs of construction work in progress, including, but not limited to, any costs associated with constructing, owning, maintaining or financing construction work in progress, shall not be included in a utility's rate base nor be allowed as an expense for rate making purposes until, and not before, said construction project is actually providing service to consumers.

RSA 378:30-a. The third sentence describes "construction work in progress" to include "any costs associated with constructing, owning, maintaining or financing construction work in progress." Id. In comparison, the second sentence also uses the term "any costs associated" but does not delimit the timing of the costs incurred to while construction is "in progress." Id. Because the second sentence captures costs beyond those "in progress" in the third sentence, the costs in the second sentence necessarily encompass costs similar to those costs in the third sentence. Thus, construed together, the third sentence informs the nature of the costs "associated with" construction work to also encompass pre-construction activities, such as "owning" and "financing." Because the statute is unambiguous, we decline to look to the legislative history of RSA 378:30-a. See Sutton v. Town of Gilford, 160 N.H. 43, 55 (2010).

Next, we turn to Liberty's contention that we should look to RSA 162-H:2, III to determine what constitutes "construction work" in the second sentence of RSA 378:30-a. Liberty contends that RSA 162-H:2, III should be read together with RSA 378:30-a to help determine whether Liberty's costs are "associated with construction work." The Department of Energy counters that Liberty waived that argument by failing to include it in Liberty's motion for rehearing. RSA 541:3 governs the procedure for rehearing before the Public Utilities Commission. RSA 541:3 (2021). It states, "[w]ithin 30 days after any order or decision has been made by the commission, any party to the action . . . , may apply for a rehearing . . . , specifying in the motion all grounds for rehearing." Id. In its motion for rehearing, Liberty did not mention RSA 162-H:2, III, specifically, but did argue that it had not made application for a siting permit, nor undertaken any pre-construction or construction activities, and cited RSA 162-H:5, I. It then drew the Public Utilities Commission's attention to RSA 162-H:2, III by letter dated January 18, 2022, more than thirty days after the Public Utilities Commission October 29, 2021 order. The Public Utilities Commission deemed this a "new argument[]" and declined to address it.

We have held however, that a party may cite new authorities so long as its general argument was raised in the first instance. See Chagnon Lumber Co. v. Stone Mill Const. Corp., 124 N.H. 820, 822 (1984); State v. Schachter, 133

6

N.H. 439, 440 (1990) (holding that where a party raised its "general theory of recovery" before the trial court, it "will not lose its right to appeal on that theory simply because it cited for the first time on appeal a statute that it believed to be favorable to its position.") Liberty argued before the Public Utilities Commission that the dictionary definitions of "construction" and "construct" provided legal support for its costs being recoverable and it pointed to its lack of siting permit activities pursuant to RSA chapter 162-H as further proof that these costs were not related to construction work. In its letter, Liberty added a specific reference to RSA 162-H:2, III to define what activities are considered "construction work." Thus, we disagree with the Commission that the letter raised a new issue; rather, it raised additional legal authority to support issues already presented by Liberty.

On the merits of Liberty's additional statutory construction argument, we are not persuaded. Liberty contends that RSA 162-H:2, III should be read in conjunction with RSA 378:30-a. RSA 162-H:2, III defines "[c]ommencement of construction."

> "Commencement of construction" means any clearing of the land, excavation or other substantial action that would adversely affect the natural environment of the site of the proposed facility, but does not include land surveying, optioning or acquiring land or rights in land, changes desirable for temporary use of the land for public recreational uses, or necessary borings to determine foundation conditions, or other preconstruction monitoring to establish background information related to the suitability of the site or to the protection of environmental use and values.

RSA 162-H:2, III (2023). Liberty contends that its costs cannot be "associated with construction work" because they do not fall under RSA 162-H:2, III. The Department of Energy and the Office of the Consumer Advocate counter that RSA 162-H:2, III and RSA 378:30-a differ, and should not be read together. We agree with them.

RSA 162-H:2, III and RSA 378:30-a are part of separate and distinct regulatory regimes dealing with different subject matter. See RSA 162-H:2; RSA 378:30-a. RSA chapter 162-H pertains to the energy facility evaluation, siting, construction and operation for projects. RSA ch. 162-H (2023). Conversely, RSA chapter 378 governs public utility rate setting. See RSA 378:27 (Supp. 2022); RSA 378:28 (2009). RSA 162-H:2, III defines what constitutes "commencement of construction" before which a certificate must be obtained from the Site Evaluation Committee. RSA 162-H:2, III; RSA 162-H:5, I. RSA 378:30-a, however, restricts certain costs from being recovered through

a utility's rates.  RSA 378:30-a.  Furthermore, the statutes were enacted at different times, rendering RSA 162-H:2, III, enacted in 1991, of little help in interpreting RSA 378:30-a, enacted more than a decade earlier in 1979.  Laws 1979, 101:1; Laws 1991, 295:1.  Therefore, we decline to import the definition of "[c]ommencement of construction" in RSA 162-H:2, III into RSA 378:30-a.

For the foregoing reasons, we affirm the order of the Public Utilities Commission.

<u>Affirmed</u>.

MACDONALD, C.J., and DONOVAN, J., concurred.